

# IN THE
# TENTH COURT OF APPEALS

_____

**No. 10-14-00019-CR**
**No. 10-14-00020-CR**
**No. 10-14-00384-CV**
**No. 10-14-00385-CV**

**MARK KEN TAFEL,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

_____

**From the County Court**
**Hamilton County, Texas**
**Trial Court Nos. 15291 and 15292**

_____

## DISSENTING OPINION

_____

The issues we decide today relate to how a concealed handgun license holder can

be confident in the determination of where it is lawful to carry.  The underlying right at

issue was confirmed by the adoption of the second amendment to the United States

Constitution.  The scope of that right was discussed at length in the United States

Supreme Court's opinion in *Heller*. *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). And the right was confirmed as applicable to the States in the United States Supreme Court's opinion in *McDonald*. *McDonald v. City of Chicago*, 561 U.S. 742, 791, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

As presented to this Court, the issue is narrower than the issue in *Heller* and *McDonald*; but due to the need to interpret various statutes and case law holdings, the issue is somewhat more complex. This is where the theory of the right to "keep and bear arms" runs into a maze of statutes and definitions that limit that right.

As a very simple factual overview, Ken Tafel was convicted of two counts of illegally carrying a handgun at a meeting of the commissioners court of Hamilton County, Texas. Tafel was, at the time of the events, a commissioner in Hamilton County and also a concealed handgun license holder. He was charged and convicted of "Unlawful Carrying of Handgun by License Holder" (Texas Penal Code § 46.035(c), (i)). After his conviction and without a hearing, his handguns were ordered forfeited to the State.

Because of the complexity of the issues, a thorough understanding of the statutes is essential. In addition to this, and because of the complexity of the interrelationship of several statutes, the language of the indictment will also be critical. Beyond the statutes and the indictment, it is necessary to have a firm grasp on various aspects of criminal law, including the concepts of the burden of proof and the placement thereof as applicable to

the elements of an offense, as well as the exceptions, defenses, and affirmative defenses to the offense. And the overlay to all of this will be the appellate standards and common law for the standard of review on appeal and how we are to construe the relevant statutory provisions.

In addition to the legal complexities, there are some factual and procedural events that occurred in this case that further heighten the complexity of the statute and the difficulty for the prosecution and defense.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

Mark Tafel was a duly elected and serving Hamilton County Commissioner on November 14, 2011. Tafel was also a concealed handgun license holder pursuant to Subchapter H, Chapter 411, of the Texas Government Code. Prior to November 14, 2011 Tafel had discussed the propriety of carrying a concealed handgun while attending the meetings of the Hamilton County commissioners court. One discussion Tafel had was with the sheriff. This conversation was due to a citizen's complaint. The complaint caused an investigation during which the sheriff requested Tafel's side of the story which was reduced to a written statement. This complaint and investigation resulted in the presentment of an indictment to the Hamilton County grand jury. The grand jury did not indict Tafel, and "no billed" the complaint.

In addition to the conversation with the sheriff, and it is not clear whether this conversation was held before or after the above described events, a conversation occurred

between Tafel and the county attorney. The county attorney made sure Tafel knew he was not representing Tafel. The county attorney was primarily concerned with whether Tafel's actions would be a felony. This is because the Hamilton County courthouse was being renovated at the time and the room being used at times for the Hamilton County commissioners court was also being used when necessary as the courtroom for the district court and the county court. The county attorney discussed his concern that carrying a handgun into the room during a commissioners court meeting would be a felony because the room was also used at times as a regular courtroom.

Tafel also talked to the county judge. The county judge had posted a sign related to prohibiting the carrying of guns in the room. After the county judge had researched the issue, he gave Tafel a letter that expressly authorized Tafel to carry a concealed handgun at meetings of the Hamilton County commissioners court.

While exercising his Second Amendment right as limited and further defined by the applicable statute or the letter from the county judge, Tafel entered the county commissioners courtroom on November 14, 2011. He was carrying two handguns, a full size .45 caliber and his backup handgun, a small .22 caliber. The commissioners court meeting was called to order and proceeded with the business on the agenda. During the first break in the commissioners court meeting, the sheriff approached Tafel and confronted him about whether he was armed, patted him down, felt what he believed to be a handgun, arrested Tafel, and confiscated Tafel's handguns, holsters, and

ammunition. Tafel immediately asked the sheriff if the sheriff wanted to see the authorization letter from the county judge. The sheriff expressed that he was not interested in the letter.

At the very next meeting of the commissioners court, the commissioners court ratified the county judge's letter which authorized Tafel to carry a concealed handgun at meetings of the county commissioners court. At the next meeting of the commissioners court after the ratification, the commissioners court voted to rescind their prior ratification of the county judge's authorization to Tafel.

Before Tafel was charged with an offense, the elected district attorney moved to recuse himself. The motion was granted and an attorney pro tem was appointed. The attorney pro tem secured two felony indictments of Tafel, one for each handgun, as well as two misdemeanor indictments, one for each handgun. The elected district court judge recused himself and notified the regional presiding judge. The regional presiding judge appointed a retired district judge to sit for the elected district judge.

The attorney pro tem tried Tafel on the felony charges of carrying a handgun in a district courtroom, Texas Penal Code section 46.03, and the misdemeanor offenses of carrying a handgun into a meeting of a governmental entity, Texas Penal Code section 46.035(c). Tafel waived a jury trial. The issues of guilt and punishment were decided by the appointed district judge. Tafel was acquitted of the felony charges by the judge appointed to sit for the district judge and convicted of the misdemeanor charges. On

appeal, this Court held that the judge sitting for the district court judge did not have jurisdiction of the misdemeanor charges, reversed the misdemeanor convictions, and remanded the proceedings. *Tafel v. State*, Nos. 10-12-00216-CR, 10-12-00217-CR, 2013 Tex. App. LEXIS 1763 (Tex. App.—Waco 2013, no pet.) (not designated for publication).

On remand, the proceedings were "transferred" to the county court. A new judge was appointed to sit in place of the county judge because the elected county judge would be a witness at trial. A new attorney pro tem was not appointed to prosecute the misdemeanor offenses in place of the county attorney who would also be a witness at trial. Tafel again waived his right to a jury trial. Tafel was again convicted of the misdemeanor offenses.

The attorney pro tem filed a motion to forfeit Tafel's two handguns pursuant to Texas Code of Criminal Procedure article 18.19(e). The motion was granted and an order of forfeiture signed. The attorney pro tem moved to withdraw from his representation of the State of Texas and was allowed to withdraw. No attorney was appointed to represent the State.

Tafel filed his briefs in the two appeals. The elected district attorney filed a brief on behalf of the State of Texas. This Court decided that the appeals of the forfeiture of the handguns, the holsters, and the ammunition were civil in nature, severed those appeals, and docketed them as civil appeals. All four appeals were scheduled for a single oral argument. The elected district attorney provided notice that another attorney would

appear at oral argument for the State of Texas. The attorney selected by the elected district attorney filed a notice of appearance and appeared at the date and time scheduled and argued the case for the State of Texas, as did Tafel's attorney.

At oral argument, the Court made an extensive inquiry into some issues that were not briefed, including, but not limited to, the authority of the attorney representing the State of Texas to appear in that capacity, double jeopardy, whether the second amendment issue impacted our standard of review on appeal, and whether the forfeiture appeals were properly severed from the criminal appeals. The Court asked for briefing on these issues as well as briefing on some of the nuances of the other issues already briefed.

The parties provided extensive supplemental briefing. The supplemental briefing can be generally grouped into two types: (1) briefing that expanded on the existing issues, and (2) briefing in response to specific issues raised by the Court upon which the Court requested briefing during oral argument. To facilitate further review and to help the parties understand which issues are being addressed in which sections of this dissenting opinion, this dissenting opinion will identify the brief and use the numbering system used in that brief to identify where the related discussion is included within the briefing of the parties.

## II.
## WHO HAVE WE HERE?[1]

I do not believe the State of Texas is properly before us.

Long before Tafel was indicted, the district attorney of Hamilton County, B.J. Shepherd, sought to recuse himself and, pursuant to his administrative role as District Attorney, moved for the appointment of an attorney pro tem "to serve until all proceedings in this investigation and any related matter has been concluded."[2]  The phrase "this investigation" related to the allegations of criminal conduct against Tafel which was noted in the motion for the appointment of an attorney pro tem.  The trial court found that Shepherd should be allowed to be recused and appointed a retired district attorney, John Terrill, as the attorney pro tem "to represent the State in all subsequent matters or proceedings in the above referenced matter," meaning the allegations of criminal conduct against Tafel.  Terrill represented the State in the first trial of Tafel, the appeal, and the second trial of Tafel.

The district attorney of Hamilton County has authority to prosecute felony charges.  In the first trial, Terrill, as attorney pro tem, prosecuted Tafel on both felony and misdemeanor charges in the district court.  Tafel was acquitted of the felony charges and

---

[1] The issues discussed in this section of this dissenting opinion are briefed by the parties in, and identified as, Appellant's Supplemental Post-Submission Brief-Issue Three; State's Supplemental Brief-Question 9; Appellant's Reply to the State's Post-Submission Brief-Issue Nine; and State's Reply Brief to Appellant's Post-Submission Briefs-item 3.

[2]  The motion and order were included as an exhibit to Tafel's supplemental post-submission brief.

convicted of the misdemeanor charges. On appeal, it was determined the trial court did not have jurisdiction of the misdemeanor charges. *Tafel v. State*, Nos. 10-12-00216-CR, 10-12-00217-CR, 2013 Tex. App. LEXIS 1763 (Tex. App.—Waco 2013, no pet.) (not designated for publication.

On remand, a new trial court judge was appointed to try the case because the county judge that would have otherwise presided over the misdemeanor trial was a pivotal witness in the trial. What no one apparently thought to address is whether Terrill, who had been appointed attorney pro tem for the recused district attorney, could prosecute the misdemeanor cases in place of the county attorney. The county attorney was also a witness in the trial. The parties have not addressed this anomaly in their briefing.

In this dissenting opinion, I have not tried to analyze the propriety of this additional wrinkle; but on the surface, it appears the attorney pro tem appointed to act for the district attorney had not been properly appointed to act as attorney pro tem for the county attorney. Nevertheless, it is just one more issue that causes my concern about the validity of Tafel's convictions; but because no issue or argument about this wrinkle is presented, I will not discuss it further.

After Tafel's convictions in the county court and the forfeitures of Tafel's guns, Terrill was allowed to withdraw from the case. Shepherd then purported to step back into the case by filing an appellate brief on behalf of the State in the appeal from the

second trial. He never revoked, withdrew, or endeavored to have a judge set aside his prior recusal/disqualification. When the case was set for oral argument, Shepherd hired a local highly qualified criminal trial and appellate attorney, John Kuchera, to argue the case before this Court on behalf of the State. Kuchera presented new and additional authorities as well as arguing the responses in the brief which had been filed by Shepherd. During oral argument, the Court questioned Kuchera about his and Shepherd's authority to represent the State. Thereafter, Shepherd, in conjunction with additional briefing of the issues at the Court's request, and properly continuing to fulfill his administrative duties as district attorney, acknowledged that he had previously been recused and sought the appointment of Kuchera as an attorney pro tem. The trial court obliged and appointed Kuchera.[3]

Whether anyone is properly before us as a representative of the State depends upon the interpretation and application of the terms "attorney pro tem" and "special prosecutor" and the offices, duties, responsibilities, and independence thereof.

An attorney pro tem assumes all the duties of the district attorney, acts independently of, and, effectively, replaces the district attorney. *Coleman v. State*, 246 S.W.3d 76, 82 n.19 (Tex. Crim. App. 2008); *State v. Rosenbaum*, 852 S.W.2d 525, 529 (Tex.

---

[3] The following discussion involves the propriety of the appearance of Shepherd and Kuchera on appeal in the criminal cases only. The issue of these attorneys appearing in the forfeiture cases, which were severed on appeal and docketed as civil appeals, may be different because the criminal case, statutory, and common law for disqualification and recusal may be different. However, the parties have not briefed that distinction, if any. Further, the propriety of the appellate severance will be discussed later in this dissenting opinion.

Crim. App. 1993) (Clinton, J., concurring). The attorney pro tem acts "during the absence or disqualification of the attorney for the state." TEX. CODE CRIM. PROC. ANN. art. 2.07(a) (West 2005); *Coleman*, 246 S.W.3d at 82.

There are different ways a district attorney can be disqualified. A district attorney can be legally disqualified, *see e.g.* TEX. CODE CRIM. PROC. ANN. art. 2.08 (West 2005), or can be "deemed" disqualified. *See id.* art. 2.07(b-1); *Coleman*, 246 S.W.3d at 81. A district attorney is deemed disqualified when he voluntarily recuses himself in a particular case and the trial court approves the voluntary recusal. *Id.* Once the recusal is approved, the trial court is able to appoint a competent attorney to perform the duties of the district attorney. *See* TEX. CODE CRIM. PROC. ANN. art. 2.07(a) (West 2005); *Coleman*, 246 S.W.3d at 81. The duration of the appointment normally depends upon the terms of the appointment order. *Coleman*, 246 S.W.3d at 83. When the order gives the attorney pro tem the ability to prosecute the case, it also gives the attorney the ability to represent the State on an appeal. *See id.*; *State v. Rosenbaum*, 852 S.W.2d 525, 528 (Tex. Crim. App. 1993). Further, the duration of the appointment is not limited by the duration of the district attorney's disqualification. *Coleman*, 246 S.W.3d at 83.

In this case, when Shepherd sought to be recused from the matter against Tafel and the trial court approved the recusal and appointed Terrill as the attorney pro tem, Shepherd was "deemed disqualified" and was thereby and thereafter disqualified to act in this case. *See id.* at 84. The trial court appointed Terrill "to represent the State in all

subsequent matters or proceedings" against Tafel. Terrill continued to represent the State through the first trial, appeal, and second trial. But when the court later allowed Terrill to withdraw, no other attorney pro tem was appointed, and there is nothing in the record to indicate that Shepherd was no longer deemed disqualified or, assuming that it could be done, that he sought to have his disqualification removed. Shepherd even acknowledged in a motion filed after oral argument in his second motion to appoint an attorney pro tem, that he had previously been recused from the matter against Tafel. Thus, Shepherd was still deemed disqualified from acting as counsel for the State, including representing the State on appeal, in the case against Tafel.[4]

In Kuchera's post-submission briefing, he argues he appeared at oral argument as a "special prosecutor" and was subsequently appointed attorney pro tem. A special prosecutor participates in a case only to the extent allowed by the district attorney and operates under his supervision. *Coleman v. State*, 246 S.W.3d 76, 82 n.19 (Tex. Crim. App. 2008); *State v. Rosenbaum*, 852 S.W.2d 525, 529 (Tex. Crim. App. 1993) (Clinton, J., concurring). The district attorney is still responsible for the prosecution, control, and management of the case. *Stephens v. State*, 978 S.W.2d 728, 731 (Tex. App.—Austin 1998, pet. ref'd); *see Rosenbaum*, 852 S.W.2d at 529 (Clinton, J., concurring). Court approval for a special prosecutor is not required because the ultimate responsibility for the special

---

[4] And, as previously mentioned, this does not consider how Shepherd, as the elected but disqualified district attorney, could represent the State in this appeal of the misdemeanor convictions rather than the county attorney. This was an issue that was not identified by the Court at the time of oral argument so no questions were asked about, or briefing requested on, this issue.

prosecutor's actions remains with the elected district attorney.  *Coleman,* 246 S.W.3d at 82 n.19; *Rosenbaum*, 852 S.W.2d at 529 (Clinton, J., concurring).

Before oral argument at this Court, Shepherd submitted a notice that Kuchera would "appear for Appellee, State of Texas at oral argument…."  Kuchera submitted his own notice later, announcing "his appearance as attorney of record…."  At argument, Kuchera asserted he was a special prosecutor.  The documents we have been provided supports this assertion.  But Shepherd was deemed disqualified.  And if Shepherd was deemed disqualified, anyone working for him was also deemed disqualified.  *See Scarborough v. State*, 54 S.W.3d 419, 424 (Tex. App.—Waco 2001, pet ref'd) (disqualification of district attorney is imputed to assistants); *State v. May*, 270 S.W.2d 682 (Tex. Civ. App.—San Antonio 1954, no writ) (same).

Without citation to authority, Kuchera argues that Shepherd's deemed disqualification was not permanent.  The disqualification may not be permanent; but having been judicially determined, there is no reason to believe it can be unilaterally terminated by the disqualified district attorney.  Further, Kuchera's argument has to fail because Shepherd, after argument at this Court, requested the appointment of Kuchera as an attorney pro tem for the State and acknowledged that he had "previously removed himself" from the matter against Tafel.

This leads to the question of whether Kuchera could qualify as an attorney pro tem when he had been, up until that point, working as a special prosecutor for Shepherd who

had been disqualified. As we have said, when a district attorney is disqualified, his assistants are as well. As a special prosecutor, Kuchera was an assistant, working under the direction of Shepherd.

What we as a court should do is ask for briefing on whether a special prosecutor is considered an assistant district attorney and thus cannot be appointed as an attorney pro tem. The logic seems inescapable that, after acting as a special prosecutor in the case for Shepherd, Kuchera could not thereafter properly be appointed as attorney pro tem to independently represent the State. The parties, however, should have the opportunity to brief the issue. And if that briefing results in a determination that Kuchera cannot qualify as an attorney pro tem in this case, we should strike the briefs filed by the deemed disqualified district attorney, Shepherd, and any other brief, supplemental brief, or reply brief filed by the disqualified special prosecutor/attorney pro tem, Kuchera, and abate this appeal to the trial court for the appointment of a qualified attorney pro tem, that is, one who has not been under the direction or employment of the deemed disqualified district attorney.[5]

In his post-submission briefing, Kuchera argues that Tafel waived any complaint about Shepherd's or Kuchera's authority to act in this appeal because he did not object. All of the cases relied upon by Kuchera were cases where the error or problem with the attorney pro tem occurred at the trial court level. That is not the situation here. Further,

---

[5] At that time, it could also be determined if the motion and appointment should be for an attorney pro tem to replace the county attorney who would normally prosecute misdemeanor offenses.

I do not believe it is the defendant's duty to file a motion to appoint an attorney pro tem to prosecute a case against the defendant or to file a brief in response to a defendant's appeal. Nevertheless, it is this Court's duty to inquire whether or not a party has a proper brief on file. *See* TEX. R. APP. P. 38.9 (relating to formal and substantive defects of briefs). Under the unusual facts of this case, we raised the issue at oral argument, and based on the foregoing, it appears the State does not have a proper brief on file in this proceeding.

Tafel argues that we should simply ignore all of the briefing filed by the State and proceed to decide the case. If the State is not properly before the Court in the briefs on file from the attorneys purporting to represent the State, I believe we are obligated to allow the State the opportunity to appear either by a properly appointed and qualified attorney pro tem, or the State Prosecuting Attorney, to represent the interest of the State in this appeal.

Nevertheless, the Court has moved forward on the briefing before it, and due to the timing and nature of the issues that have been addressed in the Court's opinion, I have no alternative other than to proceed to a discussion of the other issues.

### III.
### WHAT ISSUES DO WE ADDRESS?

Because the Court proceeds to address the issues without first resolving the question of whether the State is properly before us, I too am drawn to address the other issues in this appeal. And that is the next issue that must be decided: What are the other issues in the appeal which must be addressed?

As described in the procedural history of the case, at oral argument in these appeals we requested supplemental briefing on a number of issues not previously briefed. We were favored with a number of supplemental briefs, responses, and replies.

Notwithstanding that we requested the supplemental briefing on a number of issues, the Court has declined to address any of the issues. Indeed, the Court declines to even mention them or explain why they are not being addressed in the Court's opinion. As will be more fully addressed later when discussing the merits of those issues in this dissenting opinion, the supplemental briefs raise weighty issues that need to be resolved for a full and proper development of this appeal. For example the issue previously discussed, whether the State is properly before us in these appeals, is just one of the supplemental issues that was raised at oral argument, upon which the Court requested supplemental briefing, which the parties briefed, but which the Court disregards.

The filing, scope, and use of supplemental briefing is addressed in Rule 38.7 and Local Rule 12(f). Texas Rule of Appellate Procedure 38.7 states:

> A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe.

Tex. R. App. P. 38.7.

This Court's Local Rule 12(f) states:

> (f) Before submission, supplemental briefs may be filed without leave of the Court if no new issues are raised. If new issues are raised, leave of the Court must be obtained before such a brief will be filed. After submission, supplemental briefs may be filed only with leave of the Court.

10TH TEX. APP. (Waco) LOC. R. 12(f).

At least one court has commented that the "Texas Rules of Appellate Procedure do not contemplate the use of a supplemental brief for the purposes of raising new issues." *Ledbetter v. State,* 208 S.W.3d 723, 736 (Tex. App.—Texarkana 2006, no pet.). On the other hand, a number of courts have acknowledged that we may permit a party to amend or supplement a brief whenever justice requires. *See Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (appellate court has discretion whether to allow filing of amended or supplemental brief in interest of justice); *Black v. Shor*, 443 S.W.3d 154, 161 n. 2 (Tex. App.—Corpus Christi 2013, pet. denied). Courts have found the interest of justice authorized supplemental briefs for various reasons. In *Villareal v. State*, supplemental briefs were approved in the interest of justice to afford the "appellant an opportunity to raise additional argument she may derive from" a newly issued opinion of the Fifth Circuit on an issue relevant to her appeal. *Villarreal v. State*, 267 S.W.3d 204, 207 (Tex. App.—Corpus Christi 2008, no pet.). Moreover, courts have considered issues in supplemental briefs raised for the first time on appeal at a time when the State had an opportunity to respond. *Champion v. State*, 126 S.W.3d 686, 691 (Tex. App.—Amarillo 2004, pet. ref'd).

Additionally, it seems fairly common that courts ask that supplemental briefs be filed on various issues. The court in *Whitworth* asked the parties to address the issue of standing, and both did. *Whitworth v. Whitworth*, 222 S.W.3d 616, 639 n. 13 (Tex. App.—

Houston [1st Dist.] 2007, no pet.). Likewise, the court in *Arnell* "ordered the parties to provide supplemental briefing on the jurisdictional issues … The parties complied…." *Arnell v. Arnell*, 416 S.W.3d 188, 192 n. 3 (Tex. App.—Dallas 2013, no pet.). And the other Houston court in *Supak* noted concerns during oral argument and considered the issue and arguments contained in supplemental briefs filed by the parties after oral argument. *Supak v. Zboril*, 56 S.W.3d 785, 792 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

At oral argument, the Court raised many issues and requested supplemental briefing on some of them. In response we received a number of supplemental briefs, responses, and replies. While leave was not sought to file any of these briefs, it seems obvious that leave to file the briefs had been impliedly granted by the Court having requested briefing on the issues. While it may be within our discretion to discuss issues raised in supplemental briefs when filed without leave of court, *see Boyle v. State*, 820 S.W.2d 122, 141 (Tex. Crim. App. 1999); *State v. Krizan-Wilson*, 321 S.W.3d 619, 623 n.1 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 354 S.W.3d 808 (Tex. Crim. App. 2011), when briefing on the issue is requested, or leave to file a supplemental brief raising new issues is expressly granted, I believe we must address the issue if the issue is necessary to the disposition of the appeal. *See* TEX. R. APP. P. 47.1 (written opinion to adequately address "every issue raised and necessary to final disposition….").

To not address the issues at this juncture effectively deprives Tafel of due process. Even without our request for briefing on an issue, he may have identified the issue before

the disposition of the appeal, sought and been granted leave to file a new issue, and the Court would thus be required to address the issue. To not review and decide issues just because we requested briefing on it before counsel first raised the issue seems to be against the interest of justice and an abuse of our discretion. I would address each of the issues raised in the supplemental briefing requested by the Court that is necessary to a disposition of the appeal.

## IV.
### THE OFFENSE[6]

Initially, the statute under which Tafel was prosecuted may seem to be difficult or awkward but not too complex. So let us begin with the statute which defines the offense. The focus of this entire section is whether section 46.035(i) (whether Tafel received effective notice) is an exception or a defense to the conduct described in section 46.035(c) (carrying a handgun to a government meeting). If it is an exception, the State has to plead the exception and negate it. On the other hand, if it is a defense, the State need not plead it, although in this case it did, but it still must overcome it beyond a reasonable doubt. Thus, it matters how it is classified.

## IV-A.
### THE STATUTES

Section 46.035 of the Penal Code is entitled "Unlawful Carrying of Handgun by

---

[6] The issues discussed in this section of this dissenting opinion are briefed by the parties in, and identified as, Appellant's Brief-First Issue and Second Issue; State's Brief-Response to Appellant's First Issue and Response to Appellant's Second Issue; Appellant's Reply Brief-First Issue and Second Issue; State's Supplemental Brief-Question 1;and Appellant's Reply to the State's Post-Submission Brief-Issue One.

License Holder." The first five subsections, (a)-(e), describe or define prohibited conduct. Subsection (f) defines certain terms used in the statute and subsection (g) provides the grade of the offenses. There are then four subsections that provide for a "defense to prosecution" and two subsections that describe circumstances under which the earlier provisions "do not apply." One of our first questions will be to determine if there is a difference between a "defense to prosecution" versus a provision to which the statutes "do not apply." And within some of the five described offenses, there is an "unless" clause. The statute has been amended in various ways since the offense date. All references and quotes will be to the statute as it existed on November 14, 2011, the date of the alleged offense.

The full text of section 46.035 is as follows:

(a) A license holder commits an offense if the license holder carries a handgun on or about the license holder's person under the authority of Subchapter H, Chapter 411, Government Code, and intentionally fails to conceal the handgun.

(b) A license holder commits an offense if the license holder intentionally, knowingly, or recklessly carries a handgun under the authority of Subchapter H, Chapter 411, Government Code, regardless of whether the handgun is concealed, on or about the license holder's person:

(1) on the premises of a business that has a permit or license issued under Chapter 25, 28, 32, 69, or 74, Alcoholic Beverage Code, if the business derives 51 percent or more of its income from the sale or service of alcoholic beverages for on-premises consumption, as determined by the Texas Alcoholic Beverage Commission under Section 104.06, Alcoholic Beverage Code;

(2) on the premises where a high school, collegiate, or

professional sporting event or interscholastic event is taking place, unless the license holder is a participant in the event and a handgun is used in the event;

(3)  on the premises of a correctional facility;

(4)  on the premises of a hospital licensed under Chapter 241, Health and Safety Code, or on the premises of a nursing home licensed under Chapter 242, Health and Safety Code, unless the license holder has written authorization of the hospital or nursing home administration, as appropriate;

(5)  in an amusement park; or

(6)  on the premises of a church, synagogue, or other established place of religious worship.

(c)  A license holder commits an offense if the license holder intentionally, knowingly, or recklessly carries a handgun under the authority of Subchapter H, Chapter 411, Government Code, regardless of whether the handgun is concealed, at any meeting of a governmental entity.

(d)  A license holder commits an offense if, while intoxicated, the license holder carries a handgun under the authority of Subchapter H, Chapter 411, Government Code, regardless of whether the handgun is concealed.

(e)  A license holder who is licensed as a security officer under Chapter 1702, Occupations Code, and employed as a security officer commits an offense if, while in the course and scope of the security officer's employment, the security officer violates a provision of Subchapter H, Chapter 411, Government Code.

(f)  In this section:

(1)  "Amusement park" means a permanent indoor or outdoor facility or park where amusement rides are available for use by the public that is located in a county with a population of more than one million, encompasses at least 75 acres in surface area, is enclosed with access only through controlled entries, is open for operation more than 120 days

in each calendar year, and has security guards on the premises at all times. The term does not include any public or private driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area.

(2) "License holder" means a person licensed to carry a handgun under Subchapter H, Chapter 411, Government Code.

(3) "Premises" means a building or a portion of a building. The term does not include any public or private driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area.

(g) An offense under Subsection (a), (b), (c), (d), or (e) is a Class A misdemeanor, unless the offense is committed under Subsection (b)(1) or (b)(3), in which event the offense is a felony of the third degree.

(h) It is a defense to prosecution under Subsection (a) that the actor, at the time of the commission of the offense, displayed the handgun under circumstances in which the actor would have been justified in the use of deadly force under Chapter 9.

(h-1) [[1: As added by Acts 2007, 80th Leg., ch. 1214] It is a defense to prosecution under Subsections (b) and (c) that the actor, at the time of the commission of the offense, was:

(1) an active judicial officer, as defined by Section 411.201, Government Code; or

(2) a bailiff designated by the active judicial officer and engaged in escorting the officer.

(h-1) [[2: As added by Acts 2007, 80th Leg., ch. 1222] It is a defense to prosecution under Subsections (b)(1), (2), and (4)—(6), and (c) that at the time of the commission of the offense, the actor was:

(1) a judge or justice of a federal court;

(2) an active judicial officer, as defined by Section 411.201,

Government Code; or

(3)   a district attorney, assistant district attorney, criminal district attorney, assistant criminal district attorney, county attorney, or assistant county attorney.

(i)  Subsections (b)(4), (b)(5), (b)(6), and (c) do not apply if the actor was not given effective notice under Section 30.06.

(j) Subsections (a) and (b)(1) do not apply to a historical reenactment performed in compliance with the rules of the Texas Alcoholic Beverage Commission.

(k)  It is a defense to prosecution under Subsection (b)(1) that the actor was not given effective notice under Section 411.204, Government Code.

Enacted by Acts 1995, 74th Leg., ch. 229 (S.B. 60), § 4, effective September 1, 1995; am. Acts 1997, 75th Leg., ch. 165 (S.B. 898), § 10.04, effective September 1, 1997; am. Acts 1997, 75th Leg., ch. 1261 (H.B. 2909), §§ 26, 27, effective September 1, 1997; am. Acts 2001, 77th Leg., ch. 1420 (H.B. 2812), § 14.833, effective September 1, 2001; am. Acts 2005, 79th Leg., ch. 976 (H.B. 1813), § 3, effective September 1, 2005; am. Acts 2007, 80th Leg., ch. 1214 (H.B. 1889), § 2, effective June 15, 2007; am. Acts 2007, 80th Leg., ch. 1222 (H.B. 2300), § 5, effective June 15, 2007; am. Acts 2009, 81st Leg., ch. 687 (H.B. 2664), § 1, effective September 1, 2009. (Current version at TEX. PENAL CODE ANN. § 46.035 (West 2011)).

A careful reader may note what otherwise might appear to be a typographical error in that there is a subsection (h) as well as two subsections (h-1).  These are not typographical errors. They are numbering conventions used by the legislature when two provisions are passed in the same session that address the same statutory provision. Thus, this is the way the statute appears in the penal code and is a graphic example of the complexity even as the legislature works to make the statute understandable by the general public.

There are several important word choices of the legislature that initially may not

be noticed. For example:

1. Subsections (b)(2) and (b)(4) both contain an "unless" clause. Thus, the described conduct is a crime "unless" the conditional provision applies;

2. Subsections (h), (h-1) [1], (h-1) [2] and (k) provide that "it is a defense to prosecution" if the facts described in those subsections are present; and

3. Subsections (i) and (j) provide that a number of specified subsections that otherwise define criminal conduct simply "do not apply" under certain circumstances.

These word choices can be further distinguished from other choices used in Chapter 46. For example, section 46.05 subsections (b), (c), and (f) use the phrase "defense to prosecution" to describe certain conduct. Whereas subsection (d) of the same section and subsection (c) of section 46.06 use the phrase that certain conduct is an "affirmative defense to prosecution."

And finally, the legislature's selection of words in section 46.15 is noteworthy. The section is entitled "Nonapplicability" and proceeds to describe eight circumstances to which section 46.02 or 46.03 "do not" or "does not" apply.

This brings us to an important question. Does the selection of these different words and phrases by the legislature mean anything?

I believe that it does. To the average citizen, a reasonable person, to say that certain conduct is a crime seems clear. To say that it is a crime "unless" a certain fact exist seems clear as well. And to say that a criminal statute "does not apply" if certain facts exist seems equally clear. It may, however, become less clear to the average citizen to

understand the difference between what it means when a penal statute "does not apply" to certain conduct versus when there is an exception to the application of a penal statute for certain conduct or what it means to be "a defense" versus "an affirmative defense" to criminal conduct.

The Court's Opinion herein directs the reader to the legislature's guide to statutory interpretation. Maj. Op. at *3; TEX. PENAL CODE ANN. § 2.03(e) (West 2011). While it might be helpful in some circumstances to use the statute, it is, in the final analysis, our duty to determine what the legislature's chosen language in any given statute means. *See Reynolds v. State,* 423 S.W.3d 377, 382 (Tex. Crim. App. 2014) (reviewing court attempts to discern the fair, objective meaning of a statute at the time of its enactment). A mechanical application of a code construction statute that tells us how to interpret a penal statute can lead to the very result the code construction statute is designed to avoid: an ambiguity or an absurd result.

As for me, I cannot possibly conclude that a statute that uses dramatically different terms within the same section of the statute actually means the exact same thing. As applied to section 46.035, how can "it is a defense to prosecution" mean the same thing as it "does not apply?"

But first, let us address why it matters.

We are an appellate court. In this case, we are called upon to review the sufficiency of the evidence to support the defendant's convictions. To do this, we must know the

elements of the crime the State must prove to the requisite level of proof to obtain a conviction. But it does not stop there. We must also know whether there are circumstances that prevent the conduct from being criminal. Such circumstances can be broadly characterized as either exceptions or defenses. Moreover, exceptions and defenses can be further divided. For example, defenses can be ordinary defenses or they can be affirmative defenses. Analyzing what they are with precision is critical to understanding who, the State or the defendant, has to prove what, and to what level of certainty, for the State to obtain a valid criminal conviction.

## IV-B.
### ELEMENTS VS. EXCEPTIONS VS. DEFENSES VS. AFFIRMATIVE DEFENSES[7]

In general, an indictment must plead every element which must be proven by the State. *Dinkins v. State*, 894 S.W.2d 330, 338 (Tex. Crim. App. 1995). The Penal Code provides that an element of an offense includes: (A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of any exception to the offense. TEX. PENAL CODE ANN. § 1.07(22) (West 2011). The State must prove each element beyond a reasonable doubt. *See id*. § 2.01.

1) Exceptions

According to the code construction provisions of the Penal Code, an exception to

---

[7] The issues discussed in this section of this dissenting opinion are briefed by the parties in, and identified as, Appellant's Brief-First Issue and Second Issue; State's Brief-Response to Appellant's First Issue and Response to Appellant's Second Issue; Appellant's Reply Brief-First Issue and Second Issue; State's Supplemental Brief-Question 1;and Appellant's Reply to the State's Post-Submission Brief-Issue One.

an offense under the Penal Code is labeled by the phrase: "It is an exception to the application of . . . ." *Id*. § 2.02(a). Generally, when an exception is involved, not only must the State negate the existence of the exception in the accusation charging commission of the offense, normally an indictment, but the State must also prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception. *Id*. § 2.02(b) ("The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception.").[8] Because the negation of an exception is an element the State must prove beyond a reasonable doubt, the traditional standard of reviewing the sufficiency of the evidence would apply.

2) Defenses

And also according to the code construction provision of the Penal Code, a defense is labeled, "it is a defense to prosecution…" *Id*. 2.03(a). Unlike a statutory exception that must be negated by the State whether or not the exception is raised by the defendant, a defense must be raised by the defendant before the State has the burden to overcome it. Further, unlike an exception, the State need not plead a defense in an indictment. TEX. PENAL CODE ANN § 2.03(b) (West 2011); *see Bermudez v. State*, 533 S.W.2d 806, 807 (Tex. Crim. App. 1976); *Alford v. State*, 806 S.W.2d 581, 586 (Tex. App.—Dallas 1991), *aff'd*, 866

---

[8] In reviewing cases on this issue it may be important to note that offenses from the Health and Safety Code are not subject to this Penal Code provision. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.184(a) (West 2010).

S.W.2d 619 (Tex. Crim. App. 1993). If requested, a defensive issue must be included in the court's charge to the jury, in both the abstract and the application paragraphs. *See generally Vega v. State*, 394 S.W.3d 514 (Tex. Crim. App. 2013). *See also* TEX. PENAL CODE ANN. § 2.03(c), (d) (West 2011).[9]

A defendant bears the initial burden to produce some evidence that supports the defensive theory. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Arias*, 477 S.W.3d at 928. Once the defendant produces such evidence, the State then bears the ultimate burden of persuasion to overcome the defense beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Arias*, 477 S.W.3d at 928.

The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594. The Court of Criminal Appeals has explained that

> …we look not to whether the State presented evidence which refuted appellant's [evidence of the defensive theory], but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the crime] beyond a reasonable doubt and also would have found against the appellant on the [defense] beyond a reasonable doubt.

*Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Id*. But a

---

[9] (c) The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense.

 (d) If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.

defendant is entitled to acquittal if there is reasonable doubt on the defense. TEX. PENAL CODE ANN. § 2.03(d) (West 2011).

In reviewing the sufficiency of the evidence to support the rejection of a defensive issue, we look not to whether the State presented evidence which refuted appellant's defense, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense charged beyond a reasonable doubt and also would have found against the defendant on his defense beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

### 3) Affirmative Defenses

An affirmative defense is "labeled by the phrase: It is an affirmative defense to prosecution…." TEX. PENAL CODE ANN. § 2.04(a) (West 2011). With affirmative defenses, the burden of proof is on the defendant who must prove his affirmative defense, but only by a preponderance of the evidence. *See Van Guilder v. State*, 709 S.W.2d 178, 180-81 (Tex. Crim. App. 1985), *overruled on other grounds by Meraz v. State*, 785 S.W.2d 146, 150 (Tex. Crim. App. 1990). The Penal Code provides:

> If the issue of the existence of an affirmative defense is submitted to the jury, the Court shall charge that the defendant must prove the affirmative defense by a preponderance of the evidence.

TEX. PENAL CODE ANN. § 2.04(d) (West 2011). This burden is very different from that required of all other *defenses* that are not specifically identified as affirmative defenses.

*Van Guilder*, 709 S.W.2d at 181. As stated earlier, in other defenses, the burden of initially producing evidence to raise the defense is on the defendant; but after the defendant has met this burden of production, the State bears the burden of persuasion to overcome the defense beyond a reasonable doubt. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). This level of proof is not required of the State in a case involving an affirmative defense. *Van Guilder*, 709 S.W.2d at 181. With an affirmative defense, a defendant has both the burden of proof (by production of evidence) *and* the burden of persuasion (by a preponderance of the evidence). *See* TEX. PENAL CODE ANN. § 2.04 (West 2011); *Meraz v. State*, 785 S.W.2d 146, 150 (Tex. Crim. App. 1990).

The proper standard for review of challenges to the legal sufficiency of the evidence to support an adverse finding on an affirmative defense is as follows:

> When an appellant asserts that there is no evidence to support an adverse finding on which she had the burden of proof, we construe the issue as an assertion that the contrary was established as a matter of law. We first search the record for evidence favorable to the finding, disregarding all contrary evidence *unless a reasonable factfinder could not*. If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law.

*Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013) (emphasis in original). If the record reveals evidence supporting the defendant's position, but that evidence was subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve, we will not consider that evidence in a matter-of-law assessment. *Id*. at 670. Only if the appealing party establishes that the evidence conclusively proves the

affirmative defense and "that no reasonable jury was free to think otherwise," may we conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense. *Id*.

A criminal defendant might also raise a factual-sufficiency challenge to the jury's adverse finding on his affirmative defense. *Id*. In the factual-sufficiency review of a rejected affirmative defense, we view the entirety of the evidence in a neutral light, but we may not usurp the function of the jury by substituting our judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Id*. at 671. Therefore, we may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, we clearly state why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id*. If, in conducting a factual-sufficiency review, we find that the evidence supporting the affirmative defense so greatly outweighs the contrary evidence that the verdict is manifestly unjust, then we may reverse the trial court's judgment and remand the case for a new trial. *Id*. at 672.[10]

---

[10] There seems to remain the unanswered question of whether a defendant can raise a factual sufficiency issue to a defense. The concept lies in the constitutional underpinnings of a legal sufficiency review of the elements of the offense when conducting a *Jackson v. Virginia* review. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). If there is legally insufficient evidence of the elements of the crime, the defendant is entitled to an acquittal. *Gollihar v. State*, 46 S.W.3d 243, 246 n. 4 (Tex. Crim. App. 2001). Thus, a retrial is barred by the prohibition against double jeopardy. *Burks v. United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

4)  <u>The Need to Determine What It Is.</u>

But what if the statutory provision does not use any of these set phrases?  What if the provision uses the phrase "unless" or "does not apply?"  As mentioned above, the legislature has provided a code construction provision; and that provision is heavily relied upon by the Court.  The Court asserts that under the Penal Code, if a defense is not "plainly labeled" then it is a defense; not an exception, not an affirmative defense.  *See* TEX. PENAL CODE ANN. § 2.03(e) (West 2011).  Thus, according to the Court, any of the statutory provisions in section 46.035 that use the term "unless" or the phrase "does not apply" are defenses; nothing more, nothing less.[11]

I believe that before subsection 2.03(e) can be applied, we must first determine whether the legislature intended the penal code provision in question to be any type of "defense" to which section 2.03(e) applies rather than simply applying the statute without further analysis.  In the section under which Tafel was prosecuted, the legislature repeatedly used the phrase, "it is a defense" and then, within the same section, used the phrase, "does not apply."  By using two dramatically different phrases within the same

---

But, if a defense is not constitutionally required and if there is factually insufficient evidence for the factfinder to have rejected the defense, in essence the rejection of the defense is against the overwhelming weight of the evidence so as to show it is manifestly unjust, shocks the conscience, or clearly demonstrates bias, then may the court of appeals, but not the Court of Criminal Appeals, set aside the jury verdict and remand the case for a new trial.  This distinction should not be confused with the resurrection of *Clewis* as applied to the elements of the offense.  *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), *overruled by Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  There is only one sufficiency analysis to be applied to elements of the offense, the *Jackson v. Virginia* standard; and if the evidence is not sufficient, the result is acquittal and retrial is barred by the prohibition against double jeopardy.

[11] This would also apply to the entirety of section 46.15 which is labeled "Nonapplicability."

section of the statute, the legislature *had* to mean something different than a defense by the use of the phrase "does not apply."

Statutory construction is more than the rigid application of yet another statute that itself is not entirely clear. The full text of the provision is as follows:

> (e) A ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense.

TEX. PENAL CODE ANN. § 2.03 (West 2011). In understanding this provision, we must first determine if it even applies. When the provision starts off "a ground of defense…," it uses the term it is attempting to define, defense, as part of the definition. This complicates the analysis but also limits its scope. If it is not a defense of some type, then the provision does not apply to it. So how do we determine if a provision is a defense, or an affirmative defense, as opposed to something else?[12]

While I disagree with its ultimate holding and much of its analysis, one court has said that to determine whether provisions are exceptions the State must negate, or defenses the defendant must raise, we must decide whether they are a necessary part of the definition or description of the offense. *Arias v. State*, 477 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Other courts, including this Court, even in an opinion

---

[12] It appears to me that section 2.03(e) is best understood as a clarification between defenses and affirmative defenses, not a redefining of exceptions as defenses. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) ("This [2.04(d)] burden is very different from that required of all other defenses that are not specifically defined as *affirmative defenses* in the Texas Penal Code. In *other defenses* the burden of producing evidence is shifted to the defendant." (Emphasis added)).

authored by me, have simply concluded that if the language of the statute is not plainly labeled as an exception, then it is a defense. *Morris v. State*, No. 10-10-00158-CR, 2010 Tex. App. LEXIS 9684, at *4-5 (App.—Waco 2010, no pet) (not designated for publication); *Smith v. State*, 959 S.W.2d 1, 22 n. 35 (Tex. App.—Waco 1997, pet. ref'd); *Borkowicz v. State*, 802 S.W.2d 115, 117 (Tex. App.—Texarkana 1990, no pet.). Our prior analysis now appears to have been overly simplistic. I now propose that we must first decide whether the provisions are exceptions or defenses based upon the ordinary rules of statutory construction. If subsection (i) is not an exception, then we can apply subsection 2.03(e).

In this analysis, it is particularly evident that the phrase in subsection (i), defining subsections that "do not apply" if the actor was not given effective notice, is not a mere "defense" when the language chosen by the legislature is compared to subsection (k). In subsection (k), the legislature specified that it "is a defense to prosecution" if "the actor was not given effective notice." In two subsections of the same statute, the legislature expressly defined the lack of "effective notice" as a defense in one subsection and in another, specified that the statute that otherwise defined criminal conduct "did not apply" if "effective notice" was not given to the actor. Therefore, I must conclude the legislature meant something different than a defense when it said that without having received "effective notice," the conduct described in section 46.035(c) "does not apply" to describe criminal conduct. I believe the phrase, "does not apply," defines conduct that is an exception to the offense and not merely a defense. Thus, because it is an exception

and not a defense, we do not use subsection 2.03(e) to convert it to a defense.

## IV-C.
### STANDARD OF REVIEW — SUFFICIENCY OF THE EVIDENCE TO PROVE THE ELEMENTS[13]

In assessing the legal sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jenkins v. State*, No. AP-77,022, 2016 Tex. Crim. App. LEXIS 108, at *30 (Tex. Crim. App. 2016) (publish); *see Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Our review of "all of the evidence" includes evidence both properly and improperly admitted. *Jenkins*, 2016 Tex. Crim. App. LEXIS 108, at *30-32; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). If evidence is erroneously admitted, its impact on the verdict is separately evaluated in a harm analysis and may result in a reversal and remand for a new trial as opposed to an acquittal which is the result if the evidence is insufficient. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). *See also Standmire v. State*, 475 S.W.3d 336, 340 n.1 (Tex. App.—Waco 2014, pet. ref'd).

We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

---

[13] One of the issues we asked the parties to provide supplemental briefing on at oral argument was whether the Second Amendment overlay impacted in any way our standard of review. I have concluded that in the context of this dissenting opinion, it is unnecessary for me to resolve that issue.

to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19). Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Direct and circumstantial evidence is treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id*. Further, the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

To determine whether the State has met its burden under *Jackson* to prove a defendant guilty beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence admitted on the record at trial before the factfinder. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The "law as authorized by the indictment" consists of the statutory elements of the offense and those elements as modified by the indictment. *Thomas*, 444 S.W.3d at 8; *Curry v. State*, 30 S.W.3d 394, 404

(Tex. Crim. App. 2000).

A hypothetically correct jury charge need not incorporate allegations that would give rise to only immaterial variances. *See Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011). Immaterial variances do not affect the validity of a criminal conviction. *Thomas*, 444 S.W.3d at 9. For example, where an indictment contains an allegation that is not a statutory element, failure to prove this allegation is immaterial. *See Gollihar v. State,* 46 S.W.3d 243 (Tex. Cr. App. 2001). However, a material variance renders a conviction infirm, and the only remedy is to render an acquittal. *Id*. For example, when a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, "the law as authorized by the indictment" is limited to the method specified in the indictment and proof of a different method than that specified is a material variance. *See Geick v. State*, 349 S.W.3d 542 (Tex. Crim. App. 2011). If the State unnecessarily chooses between statutory alternatives, it must prove what it pled. *Geick*, 349 S.W.3d at 547.

What about the "surplusage doctrine" and how does that affect this case? Short answer to the second question: it does not. Surplusage has been described as an allegation in the charging instrument that is not legally essential to constitute the offense. *Gollihar v. State*, 46 S.W.3d 243, 249 (Tex. Crim. App. 2001); *Eastep v. State*, 941 S.W.2d 130, 134 (Tex. Crim. App. 1997). An exception to this doctrine required the State to prove the surplusage as alleged where the indictment contained an extra or unnecessary allegation

which only described something that was otherwise legally essential to charge the crime. *See Williams v. State*, 270 S.W.3d 140, 144 n.2 (Tex. Crim. App. 2008); *Gollihar*, 46 S.W.3d at 250; *Eastep*, 941 S.W.2d at 134 n.7.

However, the surplusage doctrine, and its exception, was overruled in *Gollihar* when the Court of Criminal Appeals held that a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances and reaffirmed the fatal variance doctrine. *Gollihar*, 46 S.W.3d at 257. Thus, allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included in the hypothetically correct charge against which the sufficiency of the evidence is reviewed. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001).

In this case, the indictment included the allegation that Tafel had received "effective notice" under section 30.06 of the Penal Code. The issue is how that allegation will be considered in the hypothetically correct jury charge.

1) <u>Elements of the Offense—Unlawful Carrying of Handgun by License Holder (Texas Penal Code § 46.035(c), (i))</u>

To determine the elements of an offense, we begin with the statute. The full text of section 46.035 is set out above. The specific subdivision of section 46.035 under which Tafel was charged is as follows:

(c) A license holder commits an offense if the license holder intentionally, knowingly, or recklessly carries a handgun under the authority of Subchapter H, Chapter 411, Government Code, regardless of whether the

handgun is concealed, at any meeting of a governmental entity.

*See current version at* TEX. PENAL CODE ANN. § 46.035(c) (West 2011).  This appears to be

clear-cut; no exceptions.  However, the legislature decided that if a person was not given

"effective notice" under section 30.06, the subsection did not apply.  *Id*. § 46.035(i).  It

appears that the legislature meant that there is no offense without effective notice.  Thus,

whether or not a person was given effective notice seems to be a necessary part of the

offense.  And in this case, the State thought it was a necessary part of the offense because

it requested that the indictment be amended to add the phrase, "after he [Tafel] was given

effective notice under section 30.06 of the Texas Penal Code…."  That request was

granted, and the indictment was amended.

2) The Indictment

After identifying the charge to be "Unlawful Carrying of Handgun by License

Holder, TEXAS PENAL CODE § 46.035(c) (i)," the amended indictment reads as follows:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

> The GRAND JURY, for the County of Hamilton, State of Texas, duly selected, empanelled, sworn, charged, and organized as such at the July Term A.D., 2011 of the 220th Judicial District Court for said County, upon their oaths present in and to said court at said term that Mark Ken Tafel, hereinafter styled Defendant, on or about the 14th day of November, A.D. 2011, and before the presentment of this indictment, in the County and State aforesaid,

> did then and there in Hamilton County, Texas, while the Defendant was a person licensed to carry a handgun under Subchapter H, Chapter 411, Government Code of Texas, intentionally, knowingly or recklessly carry a handgun under said Subchapter H, Chapter 411, at a meeting of a

governmental entity, to-wit: a meeting of the Hamilton County, Texas Commissioners Court at the Hamilton County Texas Courthouse Annex District Courtroom, after he was given effective notice under Section 30.06 of the Texas Penal Code and said handgun was a 22 caliber North American Arms revolver, Serial Number G43818,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

In an otherwise identically worded indictment, Tafel was also indicted for carrying a 45 caliber Kimber handgun into a commissioners court meeting. Because this was not a jury trial, we do not have a jury charge. Nevertheless, our sufficiency of the evidence review is the same. We must, therefore, determine what a hypothetically correct charge would look like.

3) The Elements and the Charge

What must the State prove to obtain a valid conviction?

As noted previously, exceptions are treated as elements of an offense for all purposes. On the other hand, defenses need not be alleged in the indictment but must be included in the charge in both the abstract and application paragraphs. If the requirement that Tafel be given "effective notice under section 30.06" is an exception, the elements of the offense are as follows:

1. a person (requires identity of the defendant);

2. who is licensed to carry a handgun under subchapter H, Chapter 411, Government Code;

3. intentionally, knowingly, or recklessly;

4. carries;

5. a handgun;

6. at a meeting of a governmental entity; and

7. after the person was given effective notice under section 30.06

Additionally, an extensive definition of "effective notice" would need to be provided by the trial court in the abstract portion of the charge. "Effective notice" is a term of art used in the statute which has a technical meaning and, without such a definition, would pose a risk that jurors would arbitrarily apply their own personal definition. *See Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003). Further, a definition would be required to assure a fair understanding of the evidence. *Id*. After such a definition, a hypothetically correct application paragraph of the charge, based on the facts in this case, might be as follows:[14]

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of November, 2011, in Hamilton County, Texas, the defendant, Mark Ken Tafel, while the defendant was a person licensed to carry a handgun under Subchapter H, Chapter 411, Government Code of Texas, did then and there, intentionally, knowingly, or recklessly carry a handgun at a meeting of the Hamilton County commissioners court *after the defendant was given effective notice* under section 30.06 of the Texas Penal Code, you shall find the defendant guilty of Unlawful Carrying of Handgun by License Holder as charged in the indictment and so say by your verdict.

> Unless you so believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and

---

[14] There are essentially three parts to the court's charge to a jury: general instructions, definitions of the applicable law (the abstract portion of the charge), and the application paragraph. The application paragraph is the portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). We will focus only on the application paragraph for this part of our analysis.

say by your verdict, "not guilty." (Emphasis added).

On the other hand, if subsection (i) is not an exception but rather is only a defense, then the elements of the crime are as follows:

1. a person (requires identity of the defendant);

2. who is licensed to carry a handgun under subchapter H, Chapter 411, Government Code;

3. intentionally, knowingly, or recklessly;

4. carries;

5. a handgun; and

6. at a meeting of a governmental entity.

Thus, the seventh element, the exception, is the only element omitted from the elements that distinguish the two. And even though the elements are different due to the omission of that one element, we must look at the hypothetically correct jury charge to evaluate the sufficiency of the evidence. If no defense was raised by the evidence, the application paragraph would not have the defense in it. The application paragraph in that charge, without the defense, would look like this:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of November, 2011, in Hamilton County, Texas, the defendant, Mark Ken Tafel, while the defendant was a person licensed to carry a handgun under Subchapter H, Chapter 411, Government Code of Texas, did then and there, intentionally, knowingly, or recklessly carry a handgun at a meeting of the Hamilton County commissioners court, you shall find the defendant guilty of Unlawful Carrying of Handgun by License Holder as charged in the indictment and so say by your verdict.

> Unless you so believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, "not guilty."

But this is not the end of the application portion of the hypothetically correct charge, however, if there was evidence of a defense. If evidence of a defense is admitted, and if requested, a defense must be included in the jury charge, and the State has the burden to overcome it beyond a reasonable doubt. In this case, if subsection (i) is a defense rather than an exception and the defense was properly requested, again after an extensive definition of "effective notice" in the abstract portion of the charge, a hypothetically correct charge would add the defense to the above described application paragraph and would look something like this in the jury charge:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of November, 2011, in Hamilton County, Texas, the defendant, Mark Ken Tafel, while the defendant was a person licensed to carry a handgun under Subchapter H, Chapter 411, Government Code of Texas, did then and there, intentionally, knowingly, or recklessly carry a handgun at a meeting of the Hamilton County commissioners court and you further find the defendant *was not given effective notice under section 30.06* of the Texas Penal Code, or if you have a reasonable doubt thereof, you shall acquit the defendant and so say by your verdict, "not guilty."

4) The Review

As was discussed earlier, it normally matters whether a finding is required as an element of the offense, including an exception to the offense, or a defense to the offense. In our review of this proceeding for legal sufficiency of the evidence, however, it does

not.[15] Whether lack of effective notice under section 30.06 was an exception to the applicability of the statute that had to be negated by the State for the criminal statute to apply or whether lack of effective notice was a defense that had to be raised by Tafel and then overcome by the State, the end result is the same: There is either insufficient evidence of the required element of effective notice or, alternatively, the factfinder could not have rejected the defense that effective notice was not communicated to Tafel.

Even though in this case, it does not matter whether effective notice is a defense or an exception, I believe the legislature had to mean something different when it stated three times "it is a defense" as distinguished from when it said the statute "does not apply" if the Concealed Handgun License holder did not have effective notice. I believe the "does not apply" language of section 46.035(i) is an exception to the application of section 46.035(c). Thus, I further believe it was the State's burden to negate the exception in this case before Tafel could be convicted of a violation of the statute. But it does not matter because the evidence raised the defense of lack of notice, and it put the State to the burden of persuasion that the required notice was given. Thus, regardless of whether it is an exception or a defense raised by the evidence, the State had the burden to convince the factfinder beyond a reasonable doubt that Tafel had received "effective notice" before there is or could be a violation of the statute.

---

[15] As mentioned earlier, if we were conducting a factual sufficiency review of a defense, it could matter because it could result in a reversal and remand rather than an acquittal which would not be barred by double jeopardy.

Tafel v. State                                                                                                    Page 44

## IV-D.
### EFFECTIVE NOTICE

This brings us to the question regardless of whether it is an exception or a defense: What is "effective notice?" What seems like a simple question is not. The most difficult aspect of understanding the meaning of "effective notice" is to distinguish it from what it is not. "Effective notice" is not knowledge of section 46.035(c) of the Penal Code. It is not general familiarity with or understanding of the statute regarding where concealed carry is prohibited. It is not an awareness of a risk of criminal prosecution if the Penal Code provision is violated. The Penal Code elements of the crime, or overcoming the defense, are only satisfied if the defendant received "effective notice."

The fundamental flaw in the prosecution of Tafel was the prosecutor's, and ultimately the trial court's, belief that mere knowledge of the Penal Code provision was the equivalent of notice. This is evident in a question to County Attorney Henke when the prosecutor asked:

> And regardless of whether or not a notice was posted, if they had actual knowledge that they were not approved to do that, it really wouldn't matter if it [the 30.06 sign] was posted.

But it does matter. The Penal Code says it matters. Notice, not knowledge of the statute, is required.

But in this growing quagmire of legal analysis, "effective notice" of what? An excellent question! Let us return to the statute at issue: "(i) *Subsections* (b)(4), (b)(5), (b)(6), and *(c) do not apply* if the actor was not given *effective notice under Section 30.06*."

*See current version at* TEX. PENAL CODE ANN. § 46.035(i) (West 2011) (emphasis added).

Thus, we turn our attention to section 30.06 of the Penal Code.

    1) <u>30.06 Notice</u>

Section 30.06 of the Penal Code is entitled "Trespass by Holder of License to Carry Concealed Handgun."  It provides as follows:

(a)  A license holder commits an offense if the license holder:

    (1)  carries a concealed handgun under the authority of Subchapter H, Chapter 411, Government Code, on property of another without effective consent; and

    (2)  received notice that:

        (A) entry on the property by a license holder with a concealed handgun was forbidden; or

        (B) remaining on the property with a concealed handgun was forbidden and failed to depart.

(b)  For purposes of this section, a person receives notice if the owner of the property or someone with apparent authority to act for the owner provides notice to the person by oral or written communication.

(c)  In this section:

    (1)  "Entry" has the meaning assigned by Section 30.05(b).

    (2)  "License holder" has the meaning assigned by Section 46.035(f).

    (3) "Written communication" means:

        (A)  a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass

by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or

(B)  a sign posted on the property that:

> (i)  includes the language described by Paragraph (A) in both English and Spanish;
>
> (ii)  appears in contrasting colors with block letters at least one inch in height; and
>
> (iii)  is displayed in a conspicuous manner clearly visible to the public.

(d)  An offense under this section is a Class C misdemeanor punishable by a fine not to exceed $200, except that the offense is a Class A misdemeanor if it is shown on the trial of the offense that, after entering the property, the license holder was personally given the notice by oral communication described by Subsection (b) and subsequently failed to depart.

(e)  It is an exception to the application of this section that the property on which the license holder carries a handgun is owned or leased by a governmental entity and is not a premises or other place on which the license holder is prohibited from carrying the handgun under Section 46.03 or 46.035.

Tex. Penal Code Ann. § 30.06 (West 2011).

First, it is important to note that as to a violation of section 46.035(c) the legislature is only using section 30.06 to determine if "notice" was given, not whether section 30.06 was violated.  In other words, section 30.06 defines the parameters of the notice that had

to be provided to Tafel.  Second, after we see what section 30.06 requires for "notice," we will then address what, if anything, the term "effective" as used in section 46.035(i) adds to the meaning of "effective notice."

The statute describes what the notice must do.  It must be notice that:

(A) Entry on the property by a license holder with a concealed handgun was forbidden; or

(B)  Remaining on the property with a concealed handgun was forbidden and the license holder subsequently failed to depart.

TEX. PENAL CODE ANN. § 30.06(a)(2)(A), (B) (West 2011).  There is no suggestion in the record or briefing that the State is relying on notice under subparagraph (B) above.  Tafel was never given the opportunity to depart.  Thus, we are only interested in notice that entry on the property was forbidden under subparagraph (A).

This brings us to one of the most important portions of the alleged violation.  What does it mean to "receive notice?"   The statute seems to provide the answer to this question; but upon further analysis the answer it provides is overly simplistic and leaves more questions than it answers.  Subsection (b) of section 30.06 provides:

(b) For purposes of this section, a person receives notice if the owner of the property or someone with apparent authority to act for the owner provides notice to the person by oral or written communication.

The statute appears, at first glance, to be functionally defective because it seems to use the term "notice" to describe what it means to receive notice.  This is worth further analysis.  Because the license holder must "receive notice," this subsection is actually

defining who can provide the notice and the form in which the notice must be provided.

To be notice, the notice must be provided by either

1. The owner of the property; or

2. Someone with apparent authority to act for the owner.

In this proceeding, subdivision one is not at issue. The actual owner of the property was never identified. Hamilton County was apparently leasing the property as temporary space while the county's courthouse was being renovated. But let us not be unreasonable in our application of the statute. The County "owned" the lease that gave it the authority to occupy the property. Thus, I have no problem with the concept that the "owner" for purposes of the application of the statute was Hamilton County. Hamilton County is a governmental corporate entity. That entity is represented by the commissioners court. The evidence established that prior to Tafel's arrest, the commissioners court, as such, took no action to notify anyone, including Tafel, that a license holder could not enter upon the property with a concealed handgun.

Because the "owner" of the property did not provide notice to Tafel, we must consider whether "someone with apparent authority to act for the owner" provided notice to Tafel. The State contends that the required notice was provided by Sheriff Bewley, County Attorney Henke, or County Judge Mills. We will look at what oral or written communication was provided by each of these persons in turn but there are two issues that must be discussed first. The two issues are (1) what is the acceptable form of

the communication and (2) what is the information that must be communicated.

a) *Form of the Communication*

There are two forms of communications that are authorized by the statute; oral and written.  I will deal with written communications first.

i) <u>*Written Communications*</u>

There are two forms of written communication authorized by the statute.  The statute dictates the form and content of both types of written communication.

The statute provides:

(3) "Written communication" means:

> (A)  a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or

> (B)  a sign posted on the property that:

> > (i)    includes the language described by Paragraph (A) in both English and Spanish;

> > (ii)   appears in contrasting colors with block letters at least one inch in height; and

> > (iii)  is displayed in a conspicuous manner clearly visible to the public.

TEX. PENAL CODE ANN. § 30.06(c)(3) (West 2011).

Whether a written communication that complied with the statute was provided to

Tafel can be dispensed with quickly. There was not. However, this is where some confusion is created which must be addressed. There is no suggestion in the record of any card or other document having been provided to Tafel. There was, however, testimony that at some point the County Judge put up a sign at the public entrance to the room where commissioners court met. The State relies on the posted sign as notice.

The attorney pro tem seemed to think it was important that the room was also used at various times as the District courtroom and the Constitutional County Court courtroom. That alternate use of the room as trial courtrooms was the basis for the felony indictments. And as I will address later, there is a temporal or time element that is relevant to this analysis. But it was proven that Tafel was only present while the room was being used as the county commissioners courtroom being presided over by County Judge Mills.

The testimony about the sign posted by Judge Mills is less than clear. It is not clear when it was posted, except that it was some time prior to the day of Tafel's arrest and prior to Tafel's meeting with Sheriff Bewley as will be discussed later. It is not clear when it was removed, except that it was removed sometime after Tafel's arrest. It is not clear precisely what the sign said or the size of the lettering, except that it did not comply with the requirements of the statute to be the written communication. *See* TEX. PENAL CODE ANN. § 30.06(c)(3)(B) (West 2011). Specifically, the only testimony about the wording on the sign was that it had no Spanish content as required to meet the statutory definition of

"Written Communication."  *Id*.

Thus, it is undisputed, and the record contains no evidence to the contrary, that there was no "written communication" within the meaning of the statute that would have given Tafel, or any other concealed handgun license holder, the required notice to make entry on the property with a concealed handgun a criminal violation.

### ii) *Oral Communications*

Because there was no "written communication," no written card and no compliant sign, the State now has to rely on an oral communication for section 30.06 notice.  And we know the oral communication had to be from "someone with apparent authority to act for the owner."  "Written communication" was expressly and meticulously defined by the statute.  So now we turn to the statute to the definition of "oral communication." There is none.

Notwithstanding the detailed description of two different forms of what constitutes "written communication," the legislature provided absolutely nothing to define or describe an adequate or compliant "oral communication."  It would, however, be unreasonable to require anything more to be communicated orally than in writing. Further, the oral communication should be adequate if communicated in English unless the person making the oral communication has reason to believe the person does not comprehend English.

There is nothing to suggest that Tafel cannot comprehend English and, as will be

seen from the written statement he gave to Sheriff Bewley, he can speak English and is a college graduate. So we now turn to what the evidence shows was orally communicated in English to Tafel.

b) *Means of Communication*

Three people potentially communicated notice to Tafel. We will discuss each person's communication separately.

i) <u>Sheriff Bewley</u>

We will first examine what Sheriff Bewley communicated to Tafel. Tafel gave Sheriff Bewley a written statement. It is important to know the reason this statement was created. In response to a citizen complaint, Sheriff Bewley had confronted Tafel to get "his side of the story." Thus, Bewley confronted Tafel with the complaint. The record does not contain a recounting of the dialogue between Bewley and Tafel. The only evidence we have of what Bewley said or told Tafel is that which is contained in the statement Tafel gave Bewley as a result of the confrontation. In reading the statement, particular attention should be given to what oral notice was given to Tafel that would be the equivalent of what is required information in a written communication. In summary, that would be words to the effect that "Pursuant to Section 30.06, Penal Code, a person licensed under the concealed handgun law, may not enter this property with a concealed handgun."

Because of its importance, the statement is presented exactly as it was typed and

is set out in its entirety as follows:

VOLUNTARY SWORN STATEMENT
(with legal warnings)

Person giving statement:  Mark K. Tafel

[Personal identifying information]

Location where statement given:  @ Hamilton County Sheriff's Office

√ I speak English.
Educational level: □ ___th grade □ H.S. graduate √ College graduate

√ This statement is being type by the officer. (Initials: GRB)

(MKT) I am the person named above.  I am giving this statement under oath to the peace officer whose signature appears below who has warned me as follows: (MKT)

[Standard warnings and waivers]

My name is Mark Tafel and I am the Commissioner of Hamilton County Precinct Two.  Sheriff Bewley asked me to come to his office today regarding concealed carry of a firearm.  It has been brought to my attention questions have been raised from the past where I did not willingly or knowingly break any laws. On or prior to a Commissioner's Court meeting discussion from a gentlemen, Dave Gustafson, asked questions of concealed carry.  At that point in time no 30.06 sign was posted at the courtroom nor did I know that any laws were being broken.  As questions arose weeks later I confirmed that I cannot carry a concealed weapon during court hours with proper signage displayed.  Sheriff Bewley investigated Texas Penal Codes and determined that section 46.03 and 46.035 are applicable when Commissioner's Court is in session.  From knowing this now I have not and will not carry a weapon until new laws are written from our state courts.  In fact from that day forward, in talking to Sheriff Bewley, I have been pursing with our state representative and his aid where the state house is challenging and changing the validity of 46.03 and 46.035 to allow any elected official in Commissioner's Court or any Justice Court to carry a concealed weapon as long as they are a CCL holder.

The Sheriff has asked me about a conversation that occurred prior to a Commissioner's Court meeting between myself and Mr. Gustafson. A discussion I vaguely remember was about whether we, Dave and I, were legal to carry concealed weapons in the courthouse. Judge Mills had previously told me it didn't bother him that I carried in the courthouse. There was no positive outcome of Dave and mine's conversation till weeks later when Sheriff Bewley confirmed that according to Texas Penal Code section 46.03 and 46.035 that I would be breaking the law if I carried in the courtroom when in session. Back to the discussion with Dave Gustafson, in a conversation I vaguely remember, the Sheriff has referred to my patting my clothing and ankle with which I completely disagree that could have happened. Because, I have never carried a boot gun. I do however carry an underarm shouldered weapon or small of the back carry. Again though I must reiterate that no determination was made of what is legal and what wasn't legal. Today, however, we do know, and that is why I do not carry during court. I don't want to lie I believe I was carrying a concealed weapon on my first and second court date. Again after this conversation with Mr. Gustafson I brought the concern to our County Judge and he didn't care that I was carrying during court.

This issue seems to be very confusing to me and to others. We know state law says that a 30.06 sign must be posted to stop concealed carry within that building. At no time were there any signs ever present until recently, and now I know that I cannot carry a weapon past that sign. At no time did I intentionally or knowingly break any laws. In fact I pride myself in being an upstanding law abiding citizen. Being taught what is proper in concealed carry by my instructor, Carl Chandler, told me that it was my right to carry in the state capitol while it is in session. This has been confirmed by the state reps assistant that concealed carry is allowed at the state capitol but not in a county courtroom. This is why they are vigilantly trying to change the law. This is the end of my statement.

There are a few specific passages that should be analyzed. We will discuss each in turn. There is a statement that: "Sheriff Bewley investigated Texas Penal Codes and determined that section 46.03 and 46.035 are applicable when commissioners court is in session." While they may be "applicable," that is not the issue. The issue is whether

Sheriff Bewley provided the required oral communication to Tafel that he could not lawfully enter the premises. This portion of Tafel's statement does not support such a conclusion.[16]

The statement later says, "… weeks later … Sheriff Bewley confirmed that according to Texas Penal Code section 46.03 and 46.035 that I would be breaking the law if I carried in the courtroom when in session." Unquestionably this portion of Tafel's statement is closer to documenting something that Sheriff Bewley may have provided to Tafel that would qualify as the required notice. But both forms of the written communication for notice require a specific reference to section 30.06 and that was not included in this implied oral communication from Sheriff Bewley. And each statement in the document must be considered in light of the language: "Again though I must reiterate that no determination was made of what is legal and what wasn't legal. Today, however, we do know, and that is why I do not carry during court." If these two sentences are isolated, it is clear that there was no determination made during the previous conversations with Sheriff Bewley but that, as of the date of the statement, they had determined it would be a violation.

But then there is the most important sentence in the entire statement: "We know state law says that a 30.06 sign must be posted to stop concealed carry within that

---

[16] In fact, there is a very real uncertainty whether section 46.03 "applies" when commissioners court is in session. The County Attorney, the Attorney Pro Tem, and the Sheriff may have thought so because the room was also used at times as a district courtroom. That is the felony charge for which Tafel was acquitted in the first trial.

building. At no time were any signs posted until recently, and now I know that I cannot carry a weapon past that sign." This brings home the need to reference section 30.06 in the oral communication—it informs the recipient of the basis for being excluded from the property whether it is an oral communication or a written sign.

The only reasonable inference from these statements in context is that because the purported 30.06 sign was now posted, as of the date the statement was given, which was February 23, 2011, Sheriff Bewley and Commissioner Tafel both thought that the presence of the sign was what made entry on the property by a license holder with a concealed handgun illegal. They were not relying on any type of oral notice. They were relying solely on the posted sign.

But, as discussed above, we know the purported section 30.06 sign did not comply with the required language of the statute. Because the sign did not comply with the statute, it was not a "written communication" as defined by the statute.

Thus, *from the statement* taken by Sheriff Bewley, which was "to get Tafel's side of the story," we do not know what oral statements were actually made to Tafel by Bewley. But the testimony of Sheriff Bewley informs the factfinder that what Bewley told Tafel was to not go past the sign. Sheriff Bewley was asked:

> Q: If you had known before the meeting that he was going to come in there with those guns, what would you have done? I hate to speculate, but would it have mattered?

To which Sheriff Bewley responded:

A:  I probably would have done what I'd previously done.  I would have told Mark [Tafel] that he couldn't do that and not to go past that sign.

This Penal Code provision defines conduct that is unlawful but only if a person provides notice to the actor.  Thus, the conduct is not criminal without the required notice.[17]  And if it is necessary for the penal code provision to define a crime that a person must be provided some type of notice, it is only logical that the notice can be countermanded.  If the conduct is prohibited because someone has posted a proper notice on a sign, what is the legal effect of the authorized removal of the sign?  It can only mean that the conduct is no longer criminal.

It is easy to get sucked into being comfortable with what Tafel "knew."  And looking at all the back and forth and discussion, it is easy to conclude that Tafel "knew" he could not carry his concealed weapon past the posted sign.  But regardless of what Tafel and the Sheriff thought they knew at the time, they were wrong on what made the conduct a violation.  And what the State had to prove was that Tafel was given notice as required by section 30.06 that as a license holder he could not enter the property with a concealed handgun.  That notice did not come from Sheriff Bewley.

An interesting observation is that because we know the posted sign was defective as a written communication, and further, if Tafel had actually received an oral

___

[17] Compare the offense of "Left Lane for Passing Only" and the notice required to convict a driver thereof.  *See Abney v. State*, 394 S.W.3d 542 (Tex. Crim. App. 2013).  There are other crimes which require proof of some type of notice before the conduct is criminal.  *See generally Harvey v. State*, 78 S.W.3d 368 (Tex. Crim. App. 2002) (notice of protective order); *Ex parte Vetterick*, 744 S.W.2d 598 (Tex. 1988) (notice of contempt); *In re Moreno*, 328 S.W.3d 915 (Tex. App.—Eastland 2010, orig. proceeding) (same).

communication from Sheriff Bewley that Tafel's entry with a concealed handgun was prohibited, Tafel was the only person in the room with a Concealed Handgun License that was in violation of the statute. Not another person had received an oral or written communication that entry by a license holder with a concealed handgun was prohibited.

*ii) County Attorney Henkes*

The next potential source of an oral communication to Tafel relied on by the State was Tafel's discussion with the County Attorney, Mark Henkes. Probably the easiest way to approach the ineffectiveness of the State's position that Henkes could be the person providing an "oral communication" to Tafel is that Henkes does not appear to be a person that had apparent authority to provide the statutory notice for the County. Even if he had apparent authority, at no point in his testimony does Henkes testify that he provided oral notice that would comply with section 30.06 of the Penal Code. Based on his testimony, his suggestion to Tafel was to not carry in the room because it occasionally served as a district courtroom and entry with a handgun would be a felony. For the felony offense that Henkes was concerned about, section 46.03, notice did not matter.

Henkes approached the issue from a risk management perspective that carrying a concealed handgun during a commissioners court meeting which was being held in a room that was also sometimes used as a district courtroom was not worth the risk of a felony prosecution and that he would advise against it. Henkes admitted he was not particularly familiar with the section 30.06 notice requirement because it related only to

a possible misdemeanor violation and he was focused on the possibility of a felony violation. Accordingly, there was nothing to which he testified that could be construed as having been an "oral communication" that complied with the section 30.06 notice requirement.

*iii) County Judge*

This brings us to the County Judge, Randy Mills, and his testimony about whether he provided the notice required by section 30.06 to make the entry of a license holder on the property with a concealed handgun a violation. He did not. Judge Mills did not testify that the sign he posted complied with section 30.06. So, as discussed above, he provided no evidence of a written communication. Moreover, sometime after Tafel was confronted by Sheriff Bewley and after the discussion with County Attorney Henkes, Judge Mills provided a letter to Tafel on Hamilton County letterhead that expressly authorized Tafel to carry his handgun during commissioners court meetings. The letter stated as follows:

April 14, 2011

To Whom it May Concern

Commissioner Mark Tafel is authorized by this office to exercise his authority under Texas Concealed Handgun laws to carry concealed handgun in Hamilton County Commissioners Court. This is to remain in effect until further notification.

/s/ Randy Mills
Hamilton County

Having delivered the foregoing letter to Tafel, it is not surprising that nothing in Judge Mills's testimony would even suggest that he provided "oral notice" pursuant to section 30.06. Judge Mills's testimony about all that he did to form his opinion that Tafel was not in violation of Penal Code section 46.035(c) if he carried a concealed weapon in commissioners court will be discussed in the section on the mistake of law defense.

It is important to note that when Tafel gave his statement to Sheriff Bewley, Tafel twice stated that carrying his concealed handgun was okay with Judge Mills. Of course, at that time, Tafel had not received the letter from Judge Mills so the letter was not discussed with the Sheriff. But at no time did the Sheriff indicate that it did or did not matter if Judge Mills thought it was lawful for Tafel to carry a concealed handgun to commissioners court. Likewise, Tafel did not have the authorization letter from Judge Mills at the time he was discussing the issue with County Attorney Henkes.

c) *Summary – No 30.06 Notice Was Given*

In summary, there is nothing in this record to show that Tafel was given the notice described in section 30.06 of the Penal Code that would make his carrying of a concealed handgun in commissioners court a violation of the Penal Code. But if I am mistaken on it being an exception and therefore the State's burden to negate such notice is an element of the offense; and instead, it was merely a defense and thus Tafel has the burden to raise the defense of lack of such notice, I would hold that Tafel raised the issue and the State failed to overcome the defense that section 30.06 notice was not provided. Alternately, I

would hold Tafel proved the defense, even if not his burden, as a matter of law that the required notice was not given and that a reasonable fact finder could not have rejected Tafel's defense in that regard.

2) The Temporal Nature of "Notice"[18]

Once given, how long is "notice" effective?

Judge Mills's April 14, 2011 letter, when juxtaposed against Tafel's February 23, 2011 statement to Sheriff Bewley, brings into vivid focus the temporal nature of any oral or written communication pursuant to section 30.06.  It is a simple concept.  Notice is notice until it is no longer notice.

The larger question presented is:  Can notice once given be withdrawn?  This question, and the following discussion, also highlights the difference between knowledge of the law and notice that would comply with section 30.06 of the Penal Code.

But where in the statute is this suggestion of notice having a temporal character? It comes from section 46.035(i).  This section provides:

Subsections (b)(4), (b)(5), (b)(6), and (c) do not apply if the actor was not given *effective* notice under Section 30.06.  (Emphasis added).

*See current version at* TEX. PENAL CODE ANN. § 46.035(i) (West 2011).  There are at least two conditions that could make the notice ineffective.  First, the notice could be ineffective because it does not comply with the detailed requirements for oral or written

---

[18] The issues discussed in this section of this dissenting opinion are briefed by the parties in, and identified as, Appellant's Supplemental Post-Submission Brief-Issue Four; State's Supplemental Brief-Question 2.

communications to be "notice." Second, the notice could be ineffective because it has been withdrawn or superseded. The first condition was discussed extensively above. I now turn to the second condition that can make the notice, once given, ineffective.

The first legal issue under this analysis is whether there is any way to withdraw, revoke, rescind, cancel, waive, or otherwise cause a section 30.06 notice once provided to be ineffective. The answer must be: yes! But why must that be the answer? The type of event that can make otherwise effective notice become ineffective is somewhat varied. The critical analysis is to examine the timeline of when the notice was given versus an event that could cause the previously effective notice to become ineffective. This is best illustrated by examples.

In the first example, let us assume a compliant section 30.06 sign had been posted. By definition, persons entering the property receive the section 30.06 notice. If, however, the sign is removed, persons no longer receive notice upon entering the property regardless of the fact the sign had previously been posted. This demonstrates the temporal nature of the notice. The sign is effective notice until it is taken down. A person that had once seen the sign at the location when it was properly posted would not be in violation upon entry with a concealed handgun after the sign has been removed. This has to be the case. If it is otherwise, any time one owner or operator posted a section 30.06 notice, that owner and no subsequent owner could ever remove the designation of a gun free zone by removing the section 30.06 sign.

In a second example, a person could go to a meeting and be handed a card by the president of the club holding the meeting (a non-governmental meeting). And let us assume there is a fully compliant section 30.06 notice on the card. The license holder thus has notice that as to that meeting on that day at that location she is no longer authorized to carry a concealed weapon. She must depart. But for how long and for what purpose is this section 30.06 notice by card effective? If the card is not specific, is the notice effective forever as to that Concealed Handgun License holder, at that location, and at all meetings of any organization?

Surely the card is only effective to give notice under 30.06 for the time and place that it is delivered and not forever at that location. Otherwise, it is even more permanent than a sign which is effective only until it is removed.

And as a third example, let us assume a restaurant manager gives oral notice to a customer that pursuant to Penal Code section 30.06 the customer's guns are not welcome and ask the customer to leave the premises (we will assume that is a compliant oral section 30.06 notice). Upon receiving this notice, the prospective customer rises to leave, along with a group of 30 other customers. The owner, seeing the unfolding economic nightmare of excluding license holders, decides to overrule the manager and tells the license holder that "your concealed handgun is not a problem; have a seat and spend your money." The manager's notice has thus been made ineffective by the owner rescinding it or withdrawing it. It would be absurd to hold that notice once given can

never be rescinded or trumped by a higher authority.

Another question is whether a written notice, such as a section 30.06 sign, can be rescinded or trumped by an oral or written withdrawal or waiver of the notice. Can the owner or a person with apparent authority deliver the equivalent of a permission slip to an individual, or group of individuals, to enter on property where an otherwise effective section 30.06 notice is posted? Can the owner take any action to effectively make entry not criminal if an otherwise proper section 30.06 sign is posted?

These questions, which at first may appear to be abstract and unrelated to the issues in this proceeding, are connected to it, pure and simple. But the connection is easily overlooked. The connection lies in a single word in Penal Code section 46.035(i). The subsection at issue that potentially criminalizes Tafel's entry with a handgun onto the property where the county commissioners court was meeting is that the section does not apply if he was not given "effective" notice. The use of the term effective means more in this context than simply that the information was communicated to any entrant on the property – it must also have been delivered timely and, most importantly in this step in our analysis, cannot have been withdrawn or superseded by some other event or communication.

In this case, Hamilton County Judge, Randy Mills, acting on his own and not requesting or receiving commissioners court approval, posted the sign and later removed it. Although the evidence is confusing, it appears to have been posted some time prior to

the day Tafel was arrested at the meeting. Thus, because we are assuming for this portion of the analysis that the sign was an otherwise compliant section 30.06 sign, we are assuming Tafel received the required section 30.06 notice by the sign. And for this analysis, we can also assume that oral notice was received from Sheriff Bewley and Hamilton County Attorney Henkes. Thus, notwithstanding the absence of evidence that a compliant section 30.06 notice was actually provided to and received by Tafel, we are assuming that it was. We must further assume that if it was provided and received, it had not expired by its own terms.[19]

Thus, we must determine whether the communication, the letter on Hamilton County letterhead from Hamilton County Judge, Randy Mills, had the effect of superseding all prior section 30.06 communications. In another section of this opinion, we will examine whether the letter supports a mistake of law affirmative defense. For the moment, we must focus on the delivery and cancellation, revocation, or superseded nature of the notice, if any, to determine if it remained "effective." Because there are three possible sources of notice, which we are now assuming were provided to and received by Tafel, we must then determine if any of them could have remained effective. Two assumed communications are the oral communications from Sheriff Bewley and County Attorney Mark Henkes. The third communication would have been the sign

---

[19] An oral section 30.06 notice, or a written notice on a card, could presumably communicate its duration at the time it was provided. The notice could expressly be made applicable to a single meeting or event, the same type meeting or event held at the same location, or until it was withdrawn by a subsequent notice or communication.

posted by Judge Mills.

Judge Mills provided Tafel a letter on County letterhead that is quoted in full above. The operative portion of the letter for this discussion is as follows:

> Commissioner Mark Tafel is authorized by this office to exercise his authority under Texas Concealed Handgun laws to carry concealed handgun in Hamilton County Commissioners Court. This is to remain in effect until further notification.

What is the effect of this letter as it relates to the three assumed forms of section 30.06 notice? We must analyze the two oral notices and the sign separately. In conducting this analysis we are somewhat constrained due to the fact that not only is it unclear that there were in fact any oral notices but evidence to define the temporal scope of the notices is simply non-existent. Therefore, we will stretch our assumption further and assume the oral notices had no reference to a time limit or duration and thus extended indefinitely into the future.

The issue thus framed is: Could the letter from Judge Mills override the assumed effectiveness of the oral notices? It has to. And why not? Any other result would leave the actor in the untenable position of not knowing whether it is lawful or unlawful to enter the property with his handgun under his concealed handgun license. Clarity is critical in determining when conduct is criminal. Laws are routinely held invalid for being vague.[20] In the fact pattern described with our assumption of the receipt of a

---

[20] *See for example*, *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed.2d 903 (1983) (California statute requiring loiterers to provide "credible and reliable" identification and account for his presence was unconstitutionally vague); *Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983) (Texas harassment statute

compliant oral notice under section 30.06, the countermanding of the notice that otherwise makes the conduct criminal, has to have the effect of taking away the criminal nature of the otherwise lawful conduct.

And it is not that the written countermand trumps the oral notice. It is that the last properly received notice has to be the operative, effective notice. Now, I suppose it would be possible for a notice to contain a provision related to a method of countermanding the notice that could create a timing or hierarchy conflict. But absent a suggestion that either of the oral notices purported to limit the time or method of countermanding the notice, it is clear that Judge Mills's letter countermanded the oral notice that otherwise could have made Tafel's entry on the property unlawful (remember we are, for this part of the discussion, assuming a compliant section 30.06 oral communication notice from Bewley and Henkes).

This brings us to the question of whether a writing can trump a posted sign. On the facts of this case, if we assume the section 30.06 sign posted by Judge Mills was a compliant sign even though it did not contain the required information and was not approved for posting by the commissioners court, then it seems inescapable that Judge

---

unconstitutionally vague); *Hiett v. United States*, 415 F.2d 664 (5th Cir. 1969) (federal statute prohibiting the mailing of divorce solicitation material unconstitutionally vague); *Long v. State*, 931 S.W.2d 285, 297 (Tex. Crim. App. 1996) (1993 stalking provision unconstitutionally vague on its face); *May v. State*, 765 S.W.2d 438 (Tex. Crim. App. 1989) (stalking statute as it existed before 1983 amendments unconstitutionally vague); *Garrett v. State*, 391 S.W.2d 65 (Tex. Crim. App. 1965) (Tex. Rev. Civ. Stat. art. 6701h, §§ 31, 32, return of suspended license & registration unconstitutionally vague); *State v. Hanson*, 793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.) (prior version of coercion of a public servant statute unconstitutionally vague).

Mills could issue a letter than authorizes a particular person with a concealed handgun license to enter the premises without that entry being a criminal act. Surely the person who can prohibit legal entry to all concealed handgun license holders can also authorize an exception.

There are, however, at least two provisions in Chapter 46 that should be mentioned. In section 46.03, entitled "Places Weapons Prohibited," there is a provision that prohibits handguns "on the premises of any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court. TEX. PENAL CODE ANN. § 46.03(3) (West 2011). And in section 46.035, entitled "Unlawfully Carrying of Handgun by License Holder," there is a provision that makes it an offense to carry "on the premises of a hospital …, or on the premises of a nursing home …, unless the license holder has written authorization of the hospital or nursing home administration, as appropriate." *See current version at* TEX. PENAL CODE ANN. § 46.035(b)(4) (West 2011). It could be argued that, because there are two examples of the legislature expressly providing for a written authorization that creates an exception to the offense, all other penal code provisions cannot be overridden in a similar manner. The argument is a common one: The legislature clearly knows how to express an exception to authorize the otherwise criminal conduct of the actor; it did not do so with regard to 46.035(c) (the provision under which Tafel was prosecuted); therefore, the legislature did not intend any exception to authorize the otherwise criminal conduct. But

that argument overlooks the emphasis of the legislature in creating those two exceptions.

The two express exceptions created by the legislature do two things that highlight their purpose. Both provisions limit who and how (in writing) the penal code violation can be avoided. By limiting who and how an exception can be granted in these two provisions, I could agree that, for example, a doctor who is an employee of a hospital could not authorize a private security detail to protect a patient with concealed handguns. Or, as another example, a nursing home administrator could not orally authorize a visitor to enter the facility with a concealed handgun. And, based on this limitation, I could also agree that a sheriff could not authorize a concealed handgun license holder to carry a concealed handgun in court.

The legislature clearly circumscribed who and how authorization could be obtained with regard to only two specific criminal violations. Thus, rather than trying to define every circumstance when, how, and from whom an authorization could be obtained, the legislature chose to define only those circumstances for authorization when the method of authorization needed to be limited. And thus the legislature chose to leave open the method for authorization in all other circumstances. In this case, Tafel had a written authorization from Judge Mills.[21]

In summary, except as to the two provisions which expressly limit who and how

---

[21] Possibly this was the basis for the acquittal of the offense charged as a felony, section 46.03(a)(3). It would be an absurd result of statutory interpretation if Judge Mills's letter could authorize what would otherwise be felonious conduct but could not authorize a misdemeanor violation for the same conduct.

the penal code conduct defining a crime can be authorized, I would hold that any person authorized to provide any of the forms or methods of notice under sections 46.035(i) and 30.06 that makes the conduct prohibited/criminal may also rescind, revoke, or withdraw the notice (in essence authorizing or permitting the conduct) by any of those same methods. Thus, because Judge Mills posted the sign on which the State relies to make the conduct of Tafel criminal, I believe Judge Mills also had the authority to give permission to Tafel that authorized his conduct that would otherwise be criminal. Judge Mills did so in writing.[22] Therefore, Tafel's conduct was not a criminal violation of section 46.035(c).

## V.
### MISTAKE OF LAW[23]

Moving from the sufficiency of the evidence on the elements of the offense we now move to the fact finder's implied rejection of Tafel's mistake of law affirmative defense. Tafel asserts that if he violated the law, it was based on a mistake of law.

Mistake of law is an affirmative defense to prosecution. TEX. PENAL CODE ANN. § 8.03(b) (West 2011). Unlike a defense as discussed above, to prevail on an affirmative defense of mistake of law, a defendant bears the burden of proving by a preponderance of the evidence that he reasonably believed the conduct charged did not constitute a

---

[22] In this context, the written authorization from Judge Mills does not have to be a legal opinion as defined for a mistake-of-law defense.

[23] The issues discussed in this section of this dissenting opinion are briefed by the parties in, and identified as, Appellant's Brief-Second Issue; State's Brief-Response to Appellant's second issue; Appellant's Reply Brief-Second Issue.

crime and that he acted in reasonable reliance upon:

> (1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

> (2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

*See id*. §§ 2.04, 8.03(b) (West 2011); *Reynolds v. State*, 385 S.W.3d 93, 100 (Tex. App.—Waco 2012), *aff'd*, 423 S.W.3d 377 (Tex. Crim. App. 2014). Thus, to be entitled to the statutory defense of mistake of law, a defendant must present some evidence that (1) he reasonably believed that his conduct did not constitute a crime; and (2) he reasonably relied upon either an official statement of the law or a written interpretation of the law of the type specified in the statute. *See* TEX. PENAL CODE ANN. § 8.03(b) (West 2011); *Green v. State*, 829 S.W.2d 222, 223 (Tex. Crim. App. 1992).

The proper standard in criminal cases for review of legal and factual sufficiency challenges to a jury's refusal to find on a defendant's affirmative defense was thoroughly discussed by the Court of Criminal Appeals in *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

With this background on what qualifies as a mistake of law we turn to the facts of the case. In this we again must re-visit the letter written by Hamilton County Judge, Randy Mills. Judge Mills has 27 years in law enforcement. He is not a lawyer. In his capacity as County Judge, he presides over a court of record, the Hamilton County

Constitutional County Court. As the County Judge, he is the presiding administrative officer of the County. As County Judge, he is the presiding officer over Hamilton County Commissioners Court. He is not the County Attorney.

Judge Mills independently researched the issue of whether Tafel could lawfully carry a concealed handgun to Hamilton County Commissioners Court as a Concealed Handgun License holder. After careful research including his review of relevant opinions of the Texas Attorney General, discussion with other county judges, review of the various statutes and other authorities, his 27 years as a State Trooper, and his experience as a County Judge, Judge Mills concluded that as County Judge he was authorized, if necessary, to permit Tafel to carry a concealed handgun at a meeting of the Hamilton County Commissioners Court.

Judge Mills reduced his conclusion to a brief letter. The letter clearly evidenced the opinion of Judge Mills as to not only his authority to authorize Tafel to carry the concealed handgun to commissioners court, but also his opinion that Tafel would not violate the law in doing so.

This is evident from two questions asked of Judge Mills; one on direct and one on cross-examination:

Q. But those [attorney general opinions] are typical of the attorney general opinions that you used to develop your opinion about whether or not you could authorize Commissioner Tafel to carry a handgun?

A. Yes.

Q. Was it your intent when you gave Commissioner Tafel that letter, Exhibit No. 1, to give Commissioner Tafel permission to carry a handgun to Commissioners' Court?

A. Yes, because the law supports it. If I didn't feel the law supported it, I would not have approved that and authorized that.

There is additional testimony to the same effect, including testimony regarding his belief he had the authority to revoke his authorization for Tafel to carry a handgun in commissioners court. County Judge Mills may have been mistaken about his authority or even whether his letter constituted an "opinion" for purposes of the mistake of law defense. But what is clear from the testimony of everyone is that Tafel believed that letter gave Tafel, as a Concealed Handgun License holder, the authority to carry a concealed handgun in commissioners court. And while the letter might not have been required, if Tafel was not otherwise permitted by law to enter with a concealed handgun, Tafel certainly thought that the letter from the County Judge, the person that would have been presiding over the trial as judge if he had not been a witness in the trial, had properly authorized him to do so.

The law does not require an opinion in the form lawyers are used to seeing. An appellate-style opinion, like this opinion, is not required. An opinion in the form of a typical attorney general opinion is also not required. Tafel had provided Judge Mills copies of Tafel's research, and Judge Mills testified that he reviewed those authorities and others from his own research in forming his conclusions. He expressly testified it was his opinion that he was authorized to give the authorization to Tafel. Even if Judge Mills did

not think of his letter of authorization as an "opinion," the letter left no doubt about what

Judge Mills's opinion was. As Judge Mills testified, he would not have provided Tafel

the letter if he was not of the opinion that he was authorized to do so.

And there is no doubt that Tafel relied on the letter as an opinion of Judge Mills

and on Judge Mills's authorization for Tafel to carry a concealed handgun to

commissioners court. Immediately upon being challenged, searched, and arrested by

Sheriff Bewley, Tafel asked, "Don't you want to see my letter?" The Sheriff responded,

"No, I don't want to see the letter."

Thus, under a hypothetically correct jury charge, Tafel would have been entitled

to an instruction on mistake of law, and the evidence was both legally and factually

sufficient to support this affirmative defense. Moreover, on this record, I would hold that

a reasonable factfinder could not have found against Tafel on his affirmative defense of

a mistake of law.

## VI.
### *EX POST FACTO* CONVICTION[24]

We now turn to a brief discussion of *Ex Post Facto* jurisprudence and how it is

presented in this case. For this section of the opinion, we must assume that whatever the

elements of the indicted offense are, the State proved them and that whatever the

defenses and affirmative defenses are, the State overcame them. The issue thus presented

---

[24] This issue has not been briefed by the parties. However, as will be discussed, it is a *Marin* category-one right and preservation is not required. *See Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). Thus, it should be addressed by this Court.

is: What is the legal effect of the commissioners court vote to ratify the letter given by Judge Mills to Tafel?

An *ex post facto* law is one "passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed." BLACK'S LAW DICTIONARY 580 (6th ed. 1990). The United States and Texas constitutions both forbid *ex post facto* laws. U.S. CONST. art. I, §§ 9 cl. 3, 10 cl. 1; TEX. CONST. art. I, § 16. The four categories of *ex post facto* laws as recognized by the United States Supreme Court are as follows:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.

*Calder v. Bull*, 3 U.S. 386, 390-391, 1 L. Ed. 648, 3 Dall. 386 (1798). The prohibition as to *ex post facto* laws applies not only to laws that are facially retroactive, but also to laws that are applied retroactively. *Phillips v. State*, 362 S.W.3d 606, 610 (Tex. Crim. App. 2011), *overruled on other grounds by Ex parte Heilman*, 456 S.W.3d 159 (Tex. Crim. App. 2015).

The constitutional prohibition of *ex post facto* laws has been held to be a *Marin* category-one, "absolute requirement" that is not subject to forfeiture by the failure to object. *See Ieppert v. State*, 908 S.W.2d 217 (Tex. Crim. App. 1995). *See also*

*Sanchez v. State*, 120 S.W.3d 359, 365-66 (Tex. Crim. App. 2003). On the other hand, an "as applied" constitutional challenge to a statute's retroactivity is subject to a preservation requirement and therefore must be objected to at the trial court in order to preserve error. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014). Also, in circumstances lacking any legislative *ex post facto* violation, limitations defenses are forfeitable. *See Ex parte Heilman*, 456 S.W.3d 159, 169 (Tex. Crim. App. 2015).

At the commissioners court meeting held on November 21, 2011, only seven days after Tafel was arrested at the meeting the previous week, the commissioners court ratified Judge Mills's letter. The minutes reflect the following:

A motion was made by Mills and seconded by Bonner to ratify Hamilton County Judge's letter dated April 14, 2011 authorizing Hamilton County Commissioner Precinct Two Mark Tafel, a concealed handgun license holder, to carry a concealed handgun in Hamilton County Commissioner's Court. Mills, Tafel and Bonner voted for and Boatwright and Clary voted against the ratification of the letter dated April 14, 2011 written by Judge Mills. The issue carried by a majority vote. (Recorded in Commissioner's Court Book 41 Page 712 and 714.

It should be noted that the commissioners court was not ratifying Tafel's conduct but rather was ratifying Judge Mills's letter to Tafel. The legal effect of ratification is that if the act previously taken was not authorized when taken because it was not approved by the commissioners court, the commissioners court gave the act its approval as of the date the act was taken. Thus, by ratifying the letter, Tafel had the approval of commissioners court to carry a concealed handgun in commissioners court from the date

of Judge Mills's letter, April 14, 2011, forward.[25]

Thus, if concealed carry in commissioners court can be approved by the commissioners court, and there seems to be no question that it can, then Tafel's actions were not a violation of the statute on any date after the date of Judge Mills's letter, through and including the date on which Tafel was arrested.

But on December 5, 2011 the commissioners court again took up the issue of the April 14, 2011 letter to Tafel from Judge Mills and then ratified by the majority vote of the commissioners court two weeks before. The minutes describe the events as follows:

> The court discussed at length the reconsideration of the ratification of Hamilton County Judge's letter dated April 14, 2011 authorizing Hamilton County Commissioner Precinct Two Mark Tafel, a concealed handgun license holder, to carry a concealed handgun in Hamilton County Commissioner's Court. The court was unable to go into an Executive Session because they did not have legal counsel.

> Bonner requested an AG opinion on this issue; Clary also concurred wanting an AG opinion. Mills stated he would place this on the agenda for an AG ruling.

> At the end of the discussions Bonner made a motion and Clary seconded it to rescind the ratification of Hamilton County Judge's letter dated April 14, 2011 authorizing Hamilton County Commissioner Precinct Two Mark Tafel, a concealed handgun license holder, to carry a concealed handgun in Hamilton County Commissioner's Court. The motion carried by a majority vote. Bonner, Clary and Boatwright voted for; Mills and Tafel voted against. (Recorded in Commissioner's Court Papers Book 41 Page 804.)

Thus, the commissioners court purports to rescind its previous ratification of

---

[25] Compare the authorization to the approval process for carrying a concealed handgun in a regular courtroom. TEX. PENAL CODE ANN. § 46.03(3) (West 2011) (weapons prohibited in courts or offices used by court "unless pursuant to written regulation or written authorization of the court.").

Judge Mills's letter to Tafel. Can they? Sure.

But this presents an *ex post facto* problem for the State's prosecution of Tafel. If the commissioners court could authorize Tafel to carry a concealed handgun in commissioners court, by their vote on November 21, 2011, they did. Therefore, Tafel was not in violation of the statute because the act was expressly approved by the commissioners court. Having ratified Judge Mills's letter had the effect of decriminalizing, if it was, Tafel's conduct that occurred prior to the November 21, 2011 meeting.

The subsequent vote on December 5, 2011 to rescind the prior ratification could not then retroactively make Tafel's conduct illegal. The effort in this proceeding to criminalize conduct that had already occurred, even in the unusual posture of this ratification and then the effort to rescind the ratification after the fact, violates the prohibition against *ex post facto* laws.

## VII.
### OTHER ISSUES

We now shift to some other issues that are raised only if all of the judgments are not reversed. We will begin with double jeopardy, and then look briefly at the forfeiture of the handguns.

## VII – A.
### DOUBLE JEOPARDY[26]

The parties brief four discrete double jeopardy issues. I am only going to identify the four issues and not delve too deeply into them. This approach is justified because the issues are only reached if the convictions and forfeitures stand after the resolution of the other issues.[27] My analysis is also limited by the fact that there was no double jeopardy argument made before the trial court. Generally, a defendant has the burden to "preserve, in some fashion" a double jeopardy objection at the trial court level. *See Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000) (en banc). However, a double jeopardy claim may be raised for the first time on appeal when (1) the double jeopardy violation is clearly apparent on the face of the record, and (2) when enforcement of the usual rules of procedural default serves no legitimate state interests. *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014) (*citing Gonzalez*, 8 S.W.3d at 643).

The four double jeopardy issues are:

1. Whether Tafel's acquittals in the first trial of the felony offenses of carrying a firearm in a courtroom bar subsequent prosecutions for Unlawful Carrying of Handgun by License Holder;

2. Whether Tafel's trial and convictions under section 46.035 in the first trial having been set aside on appeal bar retrial under section 46.035;

3. Whether the trial and convictions for two offenses for carrying two guns

---

[26] The issues discussed in this section of this dissenting opinion are briefed by the parties in, and identified as, Appellant's Supplemental Post-Submission Brief-Issue Two; State's Supplemental Brief-Question 6; Appellant's Reply to the State's Post-Submission Brief-Issue 6.

[27] In theory, it may be better to address the double jeopardy issues first, but as a constitutional issue jurisprudential tradition calls for resolution of the other issues first.

to the same commissioners' court meeting are two convictions for the same conduct; and

4. Whether the trial court's decision not to forfeit Tafel's handguns after the first trial bars the forfeiture after the second trial.

I will not further discuss issues two and four because those were essentially conceded by Tafel. Issue one, however, is an interesting issue and may be the first time a felony grade offense has been argued to be a "lesser included" offense of a misdemeanor. When the elements of the offenses are compared to each other, but more particularly to the facts of the case as presented, one can see how a strong argument can be made that the felony grade offense set forth in section 46.03(a)(3) could be a lesser included offense of the misdemeanor offense, section 46.035(c).

There is also another interesting aspect of this issue. Case authority supports the retrial of an offense by a court with jurisdiction after a trial and conviction for an offense over which the first trial court had no jurisdiction. *Hoang v. State*, 872 S.W.2d 694, 698 (Tex. Crim. App. 1993). On the other hand, case authority also seems to support the proposition that a trial and acquittal of an offense by a court that does not have jurisdiction cannot be retried by a court that does have jurisdiction. *Ball v. United States*, 163 U.S. 662, 669 (1896). How that case authority would be applied in this instance, where there was a trial and acquittal on one set of charges over which the trial court did have jurisdiction and a trial and conviction by a court without jurisdiction on another set of charges that were all based on the same conduct and now a second trial and conviction

for that same conduct is unresolved.

Nevertheless, it appears that to resolve this double jeopardy issue, we would be required to go outside the existing record, and therefore, no error is apparent from the face of the record. Therefore, since no objection was made at trial, the issue is not preserved and thus, not properly before us.

This leaves the analysis of whether Tafel violated section 46.035(c), assuming that he did, twice or only once when he entered the commissioners court meeting with two handguns. The only allegation that is different between the two indictments and judgments at issue in this proceeding is the description of each handgun. The indictments and amended indictments are otherwise identical as to the date and time of the alleged violation. It is undisputed that Tafel had two handguns on his person when he entered the room to attend the meeting of the Hamilton County commissioners court.

When we analyze the statute, and more precisely the notice provision, it is clear that it is the entry on the property with a handgun that is forbidden. Tafel was lawfully in possession of both handguns. The handguns are not contraband, generally, nor were they contraband in Tafel's possession. The fact that a concealed carry license holder had a handgun on their person at the time they entered the property is the gravamen, or focus of the offense. *See Garfias v. State*, 424 S.W.3d 54, 59 (Tex. Crim. App. 2014). As indicted and as shown by the evidence at trial, Tafel only entered the property one time.

The State's attempt to fragment the offense based on the number of handguns

Tafel carried is not the allowable unit of prosecution. *See generally Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015). If he had only one handgun on his person and left at some point and returned while carrying the same concealed handgun, he might then have violated the statute a second time. It is the entry to the meeting that is prohibited, and each entry is a separate offense; but one entry with multiple handguns is only a single offense.

Having determined that the double jeopardy clause is thus violated for two prosecutions of the same act, we would then have to decide which judgment to dismiss. This process is resolved by a comparison of the offenses. Because they are identical other than the description of the firearm, Tafel suggests that the first conviction be sustained and the second conviction vacated. *See, generally, Bigon v. State*, 252 S.W.3d 360, 372-73 (Tex. Crim. App. 2008).

## VII – B.
### FORFEITURE[28]

The Court affirms the forfeiture of Tafel's handguns. I disagree.

Tafel's convictions and punishment were imposed in open court on December 20, 2013. The judgments of conviction were signed on December 30, 2013. Only four days earlier, on December 26, 2013, the State requested the forfeiture of Tafel's two handguns

---

[28] The issues discussed in this section of this dissenting opinion are briefed by the parties in, and identified as, Appellant's Brief-Third Issue; State's Brief-Response to Appellant's third issue; Appellant's Reply Brief-Third issue.

pursuant to article 18.19(e) of the Texas Code of Criminal Procedure. The orders granting

the forfeitures were signed on the same day the judgments of conviction were signed.

There was no hearing regarding the forfeitures prior to the signing of the orders.[29]

Initially, the appeals of the forfeitures were included within the two appeals of the

criminal convictions and were thus docketed as part of the criminal appeals. Without

much analysis, I suggested that the forfeiture proceedings be severed into separate

appellant cases and docketed as civil appeals with docket numbers of their own under

the general premise that forfeiture proceedings are civil in nature. Upon further

reflection, I now question whether this was appropriate because the weapons were not

forfeited pursuant to Chapter 59 of the Texas Code of Civil Procedure, which is clearly a

civil forfeiture procedure, and because of the real problems a defendant will encounter if

a forfeiture under this particular subsection of the Code of Criminal Procedure is

docketed and pursued as a civil appellate proceeding.[30] However, the manner of

---

[29] It appears that no hearing is required if a forfeiture timely occurs pursuant to this subsection of article 18.19. *See* TEX. CODE CRIM. PROC. ANN. art. 18.19(e) (West 2015). *See also Martin v. State*, 873 S.W.2d 457 (Tex. App.—Waco 1994, no writ) (where court only notes appellant's concession that article 18.19 in effect at the time does not require an evidentiary hearing).

[30] It is possible that a forfeiture under article 18.19(e) could be reviewed and a decision become final before an appellate determination regarding the correctness of the criminal judgment. If that occurs and the criminal judgment is reversed, there is no recourse for the defendant whose property was erroneously forfeited. A conviction is required before a forfeiture can occur under article 18.19(e).

I also recognize that this Court has previously held that the Rules of Civil Procedure applied to a forfeiture pursuant to Chapter 18 of the Code of Criminal Procedure. *See Hardy v. State*, 50 S.W.3d 689 (Tex. App.—Waco 2001), *aff'd*, 102 S.W.3d 123 (Tex. Crim. App. 2003); *F & H Invs., Inc. v. State*, 55 S.W.3d 663, 668 (Tex. App.—Waco 2001, no pet.). However, those cases involved a forfeiture under article 18.18 subsection (b), not article 18.19 subsection (e), and no conviction was involved in the particular case or required by statute before the property could be forfeited. Further, in affirming this Court's opinion in *Hardy*, the Texas

docketing those appeals does not affect the outcome of the forfeiture appeals at this Court

or my belief that the Court is incorrect in affirming those forfeitures.[31]

As noted above, four days prior to the signing of the judgments of conviction of

Tafel, the State moved to forfeit Tafel's two handguns pursuant to article 18.19(e). In

relevant part, subsection (e) provides:

> If the person found in possession of a weapon is convicted of an offense involving the use of the weapon, before the 61st day after the date of conviction the court entering judgment of conviction shall order destruction of the weapon, sale at public sale … , or forfeiture to the state…. If the court entering judgment of conviction does not order the destruction, sale, or forfeiture of the weapon within the period prescribed by this subsection, the law enforcement agency holding the weapon may request an order of destruction, sale, or forfeiture of the weapon from a magistrate.

TEX. CODE CRIM. PROC. ANN. art. 18.19(e) (West 2015).

Tafel contends in his third issue that there is no evidence that he "used" either

handgun as required for forfeiture under subsection (e). Based on the Court of Criminal

Appeals decision in *Patterson*, the Court holds the evidence of use to be sufficient because

the term "use" includes simple possession of the weapon. *See* Maj. Op at *4; *Patterson v.*

---

Supreme Court narrowed this Court's broad statement regarding the scope of an in rem proceeding under Chapter 18 stating, "…it is a proceeding against the property itself, not against the owner, and 'does not involve the conviction of the owner or possessor of the property seized.'" *Hardy v. State*, 102 S.W.3d 123, 127 (Tex. 2003). Thus, I do not believe that it is set in stone that *all* forfeitures under Chapter 18 are civil proceedings.

[31] Obviously, if the criminal convictions are overturned for any of the numerous reasons discussed above, the related forfeiture of Tafel's handguns should also be reversed. Thus, we withheld the disposition of the forfeiture appeals until the outcome of the criminal appeals was also ready to be decided. Nevertheless, Tafel will be forced to pursue further appeals by petition for review of the forfeiture of his handguns to the Texas Supreme Court and a petition for discretionary review to the Court of Criminal Appeals for review of his criminal convictions. I believe this is unduly burdensome and not required under the Code of Criminal Procedure.

*State*, 769 S.W.2d 938 (Tex. Crim. App. 1989). In reviewing whether the evidence was sufficient to support a deadly weapon finding, the Court of Criminal Appeals in *Patterson* defined the phrase "used a deadly weapon" as "the deadly weapon was employed or utilized in order to achieve its purpose." *Patterson*, 769 S.W.2d at 858. Thus, the actor must use the item or object as a deadly weapon and not for some other purpose. *Plummer v. State*, 410 S.W.3d 855, 858 (Tex. Crim. App. 2013).

Since *Patterson*, deadly-weapon findings have been upheld when the evidence showed some relationship between the weapon and the associated felony. *Id*. at 859. But the Court has declined to uphold deadly-weapon findings when the weapon was present but did not facilitate a separate felony. *Id*. at 860. For example, in *Ex parte Petty*, the Court held that the offense of possession of a firearm by a felon could not support a deadly-weapon finding because the weapon was not used "to achieve an intended result, namely, the commission of a felony offense separate and distinct from 'mere' possession." *Ex parte Petty*, 833 S.W.2d 145 (Tex. Crim. App. 1992). Similarly, in *Narron v. State*, the Court deleted the deadly weapon finding because the short-barreled shotgun was both the subject of the conviction and the basis of the deadly-weapon finding. *Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992). The shotgun had not been used to facilitate any other felony. *Id*.

Here, it was not illegal for Tafel to carry a handgun. He was licensed to carry. It was the place into which he carried those handguns which arguably caused his conduct

to be a criminal offense.  The carrying of the handguns did not facilitate another offense, let alone a felony offense.  Thus, according to the definitions used by the Court, there was no evidence that Tafel *used* the handguns which would authorize their forfeiture.  The Court errs in holding otherwise.

To arrive at its conclusion to affirm the forfeitures, the Court also relies upon subsection (a) of article 18.19 to hold that a separate and distinct offense to show "use" was not required because Tafel was convicted of an offense under Chapter 46; and thus, Tafel's handguns could be forfeited by virtue of that provision alone.  This is wrong.

Subsection (a) provides:

Weapons seized in connection with an offense involving the use of a weapon or an offense under Penal Code Chapter 46 shall be held by the law enforcement agency making the seizure, subject to the following provisions, unless:

(1) the weapon is a prohibited weapon identified in Penal Code Chapter 46, in which event Article 18.18 of this code applies; or

(2) the weapon is alleged to be stolen property, in which event Chapter 47 of this code applies.

TEX. CODE CRIM. PROC. ANN. art. 18.19(a) (West 2015).  Subsection (a) pertains to the holding of the weapons seized in connection with the use of a weapon or an offense under Chapter 46 unless certain conditions not present here exist.  Except in those specified circumstances, article 18.19(a) does not independently provide for the forfeiture of the weapons seized.  Subsections (d) and (e) provide for the ways to forfeit weapons seized

and held under subsection (a). Subsection (d) allows for the disposition, whether by destruction, sale, or forfeiture, of a weapon when a person is convicted or placed on deferred adjudication *for an offense under Chapter 46*. Subsection (e), however, provides for the disposition, whether by destruction, sale, or forfeiture, of a weapon when a person is convicted of *an offense involving the **use** of the weapon*.

The State could have elected to pursue a forfeiture under subsection (d) but it did not. Under subsection (d), any offense under Chapter 46 triggers the possibility to forfeit the weapon. But under a subsection (d) forfeiture proceeding, Tafel would be allowed to request the return of his handguns, and the judge could only forfeit under certain conditions which the State, in this case, did not prove. *See* TEX. CODE CRIM. PROC. ANN. art. 18.19(d) (West 2015).[32]

The State chose to seek forfeiture of the handguns only under subsection (e), which applies when a person is convicted of an offense involving the use of the weapon. Determining that the weapons could be forfeited under this subsection without evidence

---

[32] …the court entering the judgment shall order the weapon destroyed, sold …, or forfeited … if:

> (1) the person does not request the weapon before the 61st day after the date of the judgment of conviction or the order placing the person on deferred adjudication;
> (2) the person has been previously convicted under Chapter 46, Penal Code;
> (3) the weapon is one defined as a prohibited weapon under Chapter 46, Penal Code;
> (4) the offense for which the person is convicted or receives deferred adjudication was committed in or on the premises of a playground, school, video arcade facility, or youth center, as those terms are defined by Section 481.134, Health and Safety Code; or
> (5) the court determines based on the prior criminal history of the defendant or based on the circumstances surrounding the commission of the offense that possession of the seized weapon would pose a threat to the community or one or more individuals.

*Id*.

of an offense involving the use of the weapons simply because the offense was a Chapter 46 offense makes subsection (d) meaningless. Why would any agency seek forfeiture under subsection (d) when it could do the same thing without having to prove any grounds under (d) and without having to allow the owner of the weapon to ask for the return of the weapon?[33] By choosing to attempt to forfeit Tafel's handguns only under subsection (e), the State should be held to that subsection's standards. Because it did not meet those standards, the forfeitures should be reversed.[34]

## VIII.
### CONCLUSION

I would reverse our prior severance order, dismiss the civil forfeiture appeals, and address the forfeiture issues in the criminal appeals. Further, for any of the various reasons discussed above, I would reverse the criminal convictions of Tafel for Unlawful

---

[33] Here we do not address the constitutionality of the *ex parte* nature of the forfeiture under subsection (e), particularly if the weapon may be owned by another person. By the use of article 18.19(e), other persons who have an ownership interest in the weapon, such as a spouse, have no notice or opportunity to assert their ownership.

[34] The State requests that we supplement the record with the record of the forfeiture hearings after the first convictions that were reversed. There is nothing in the record before us to suggest that this testimony was admitted into evidence for the trial court's consideration regarding the current forfeiture motion. Had we stricken the responses by the disqualified district attorney and the disqualified attorney pro tem, we would not have to address this motion. However, we have historically refused to supplement the appellate record with something that was not before the trial court when it made its decision. *Davis v. State*, 293 S.W.3d 794, 798 (Tex. App.—Waco 2009, no pet.) (in a civil forfeiture, trial court erred in judicially noticing the record from the criminal trial before the same trial court judge; "in order for testimony at a prior hearing or trial to be considered at a subsequent proceeding, the transcript of such testimony must be properly authenticated and entered into evidence."). We should not do so now. Further, the record from the previous forfeiture hearing after the first trial which the State now wants the Court to use did not result in the forfeiture and was from a trial and forfeiture hearing before a different judge. Further, if we were to supplement the record in the fashion suggested by the State, we would also have to revisit the double jeopardy issue to then determine if double jeopardy was apparent on the face of the record.

Carrying of Handgun by License Holder and enter judgments of acquittal. Likewise, I would reverse the forfeiture orders and order Tafel's handguns returned to him. Because the Court affirms the convictions and forfeitures, I respectfully dissent.

TOM GRAY
Chief Justice

Dissenting opinion delivered and filed September 7, 2016[35]
Publish



---

[35] This dissenting opinion is being reissued on September 7, 2016 to correct the spelling of District Attorney B.J. Shepherd's name which was spelled incorrectly in the original dissenting opinion issued with the Court's opinion on August 31, 2016. The dissenting opinion issued on August 31, 2016 is hereby withdrawn.